**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2023 MSPB 5**

Docket No. DE-0752-15-0169-I-1

**Cathy Covington,**

**Appellant,**

**v.**

**Department of the Interior,**

**Agency.**

January 13, 2023

Nina Ren, Esquire, Washington, D.C., for the appellant.

Frank Lupo, Esquire, and Jared M. Slade, Albuquerque, New Mexico, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Limon recused himself and
did not participate in the adjudication of this appeal.

## OPINION AND ORDER

¶1  The appellant has filed a petition for review of an initial decision that sustained her removal. For the reasons set forth below, we GRANT the appellant's petition, VACATE the initial decision, and REMAND this matter for further adjudication consistent with this Opinion and Order.

## BACKGROUND

¶2  The appellant was employed as a Forester in the agency's Bureau of Indian Affairs (BIA), Trust Services, Navajo Region, in Fort Defiance, Arizona. Initial

Appeal File (IAF), Tab 4 at 15-17, Tab 6 at 137. The Navajo Region serves the Navajo Nation, which it considers its "sole customer." Hearing Transcript (HT) at 167 (testimony of the appellant's first-level supervisor). The Navajo Region is concerned with maintaining a good relationship between the BIA and the Navajo Nation. *Id.*

¶3        Consistent with the Federal Government's move toward greater autonomy for Indian tribes, the BIA's Navajo Region and the Navajo Nation have entered into what are commonly known as "638 contracts" concerning timber and other trust assets. HT at 116 (testimony of a BIA Tribal Operations Specialist), 156-57, 173-74, 209-10 (testimony of the appellant's first-level supervisor). Trust assets are assets that the Federal Government holds "in trust for Indian tribes and individual Indians." 25 C.F.R. § 115.002. The term 638 contracts refers to contracts that are entered into under the Indian Self-Determination and Education Assistance Act, Pub. L. No. 93-638, § 102, 88 Stat. 2203, 2206 (1975) (codified as amended, at 25 U.S.C. § 5321); HT at 156 (testimony of the appellant's first-level supervisor). Under these self-determination contracts, tribal organizations are permitted to self-administer certain programs that would otherwise be administered on their behalf by the Federal Government. HT at 156-57, 173-74; *see* 25 U.S.C. § 5321(a); *Hinsley v. Standing Rock Child Protective Services*, 516 F.3d 668, 670 (8th Cir. 2008).

¶4        The Navajo Region has a 638 contract with the Navajo Nation Forestry Department. HT at 157 (testimony of the appellant's first-level supervisor). Pursuant to a self-determination agreement with the BIA, the Navajo Nation Forestry Department self-administers aspects of its forestry management operations, including issuing permits for harvesting and selling timber products on Navajo Nation lands. HT at 157, 169 (testimony of appellant's first-level supervisor); IAF, Tab 5 at 26-33. Nevertheless, the BIA's Navajo Region is responsible for reviewing and approving permits for harvesting timber. IAF, Tab 5 at 96-97; 25 C.F.R. §§ 163.1, 163.3, 163.10, 163.26. The BIA Navajo

Region's self-determination officer oversees these 638 contracts with the assistance of awarding officials, who in turn are assisted by awarding official's technical representatives (AOTRs) and sub-awarding technical representatives. HT at 157-58 (testimony of the appellant's first-level supervisor).

¶5      In May 2013, while the appellant was serving a 1-year probationary period as a Supervisory Forester, the agency designated her as the AOTR for the BIA's 638 contract with the Navajo Nation Forestry Department.  IAF, Tab 5 at 36, 51. On December 2, 2013, she received a telephone call from a Navajo Nation Forestry Department official.  IAF, Tab 5 at 19.  He expressed concern that "timber . . . was being harvested along right-of-way [for Arizona State Highway] 264 . . . [without a] timber sale contract."  *Id.* at 19; HT at 378-79 (testimony of the appellant).  Highway 264 runs through the Navajo Nation.  HT at 163 (testimony of the appellant's first-level supervisor).

¶6      Two days later, the appellant visited the identified location and observed the Arizona Department of Transportation (ADOT) cutting down trees along Highway 264 and loading them onto trailers.  IAF, Tab 5 at 19-23, 34.  She interviewed two individuals who advised her that the trees were "being hauled to the Navajo Nation Forestry Department to be processed and cut into rough cut lumber."[1]  *Id.* at 20.  She obtained a copy of a "Transportation Permit" issued by the Navajo Nation Forestry Department that allowed for removal of the timber at issue along the right-of-way.  *Id.* at 19, 24.

¶7      The following day, the appellant wrote two memoranda notifying her first-level supervisor, the Regional Director, who was her second-level

[1] Although the appellant was not aware of it at the time, ADOT was removing trees along its right-of-way to widen the highway.  HT at 164-65, 170 (testimony of the appellant's first-level supervisor).  ADOT gave the trees it cut down, free of charge, to the Navajo Nation Forestry Department.  HT at 165, 170-71 (testimony of the appellant's first-level supervisor); IAF, Tab 5 at 38.  The Navajo Nation later directed the Forestry Department to share the wood within the community, including with a tribal member who lost his previous home in a fire.  IAF, Tab 5 at 38, 41.

supervisor, and the awarding official, that she had shut down this project, which she described as a "timber permit sale." *Id.* at 19-20. The appellant was under the impression that the right-of-way along Highway 264 was subject to a 638 contract between the BIA and the Navajo Nation. IAF, Tab 5 at 24; HT at 380 (testimony of the appellant). Such an agreement would require the Navajo Nation to follow BIA regulations. IAF, Tab 5 at 22; HT at 380, 418 (testimony of the appellant). She believed that the Navajo Nation Forestry Department had violated these regulations by failing to have a timber sale contract in place. HT at 380 (testimony of the appellant). She shut the project down on that basis. *Id.*

¶8 In her December 5, 2013 memoranda, the appellant asserted that the Navajo Nation Forestry Department was not authorized to retain any revenues from the timber sale absent a tribal resolution to that effect and that it was a conflict of interest for the Navajo Nation Forestry Department to have obtained the timber sale permit for its own benefit because it distributed the permits. IAF, Tab 5 at 19-21, 51. It is undisputed that shutting down work was outside the scope of the appellant's authority as the AOTR. HT at 160-61, 166-67 (testimony of the appellant's first-level supervisor), 417-18 (testimony of the appellant); IAF, Tab 5 at 47-49, 52. By shutting down the Highway 264 project, she caused tensions between the BIA and the Navajo Nation. HT at 168, 172-73, 245 (testimony of the appellant's first-level supervisor).

¶9 The Navajo Region later determined that the land from which trees were being cut was not subject to a 638 contract. HT at 170-71 (testimony of the appellant's first-level supervisor). Instead, the agency, with the concurrence of the Navajo Nation, had provided ADOT with a right-of-way, giving it "rights and claims" within the area at issue along the highway, which apparently included the right to dispose of timber located along the right-of-way as they saw fit. HT at 170 (testimony of the appellant's first-level supervisor); IAF, Tab 5 at 34. The Regional Director determined that "[t]he [Navajo Nation] forestry department ha[d] partnered with ADOT to collect and remove all timber to be utilized for

local community needs at no cost" and advised the appellant that "BIA supports this arrangement" between the two parties. IAF, Tab 5 at 38.

¶10   By letter dated March 11, 2014, the Regional Director returned the appellant to her prior nonsupervisory position based on the appellant's actions in stopping ADOT's work along Highway 264. *Id.* at 36. She faulted the appellant for making a "premature decision" and demonstrating a "lack of expert guidance" by interfering in the arrangement between ADOT and the Navajo Nation Forestry Department. *Id.* According to the Regional Director, the appellant's action resulted in an "unnecessary delay of the project" and "forced [BIA] to enter into an unnecessary [memorandum of understanding] with [ADOT]." *Id.* The appellant returned to her prior position effective March 16, 2014.[2] *Id.*

¶11   Between late December 2013 and early January 2014, as well as on or around June 18, 2014, the appellant reported additional alleged agency wrongdoing to the agency's Office of Inspector General (OIG). IAF, Tab 6 at 27-29, Tab 33 at 10. She also sent a September 11, 2014 email to the Navajo Nation Forest Manager raising concerns that certain Navajo Nation-proposed tree harvesting projects did not comply with the National Environmental Policy Act (NEPA) and other Federal laws. IAF, Tab 5 at 39. The awarding official and the appellant's first-level supervisor learned of this email to the Navajo Nation later that month. *Id.* at 43, 45.

¶12   On November 6, 2014, the appellant's first-level supervisor proposed her removal based on a charge of "Failure to Safeguard Government Records." IAF, Tab 6 at 47-48. In its first specification, the agency asserted that on July 22, 2014, despite receiving instructions requiring her to complete an inventory of

---

[2] There is no evidence that the appellant sought to overturn this action before the Board or in any other forum. HT at 383-84 (testimony of the appellant). It is not at issue in this appeal. We mention it here for purposes of providing background for the appellant's alleged protected disclosures. IAF, Tab 40 at 2-3.

documents and get approval before moving those documents from her former duty station in Fort Defiance, Arizona, to her new office in Gallup, New Mexico, the appellant "removed and disposed of confidential [G]overnment records in a public dumpster that contain[ed] the PII [Personally Identifiable Information] of individuals [such as] names and social security numbers, date[s] of birth, and [F]ederal records including Indian [Fiduciary Trust] Documents" (e.g., maps). *Id.* at 47-49, 158-60. The agency noted that other documents the appellant had placed in her vehicle were not recovered and it was unknown which of those files were missing because she did not complete the required inventory. *Id.* at 49. In its second specification, the agency alleged that on July 25, 2014, the appellant loaded inventoried records into a Government vehicle and transported them to her new office on her own, despite an instruction to travel with another employee in a different Government vehicle. *Id.* The appellant filed a complaint with Office of Special Counsel (OSC) on November 25, 2014, alleging retaliation for whistleblowing. *Id.* at 4-35. After the appellant responded to the proposal notice orally and in writing, the deciding official sustained the charge and effectuated her removal on December 29, 2014. IAF, Tab 4 at 15, 17-22.

¶13 The appellant filed a Board appeal of her removal. IAF, Tab 1. She raised affirmative defenses of reprisal for whistleblowing and equal employment opportunity (EEO) activity and alleged a violation of her right to due process. IAF, Tab 1 at 6-8, Tab 33 at 4-5, Tab 40 at 2-3, Tab 41 at 4-7, Tab 45 at 1-2. After a hearing, the administrative judge issued an initial decision affirming the removal. IAF, Tab 54, Initial Decision (ID) at 1, 36. He found that the agency proved both specifications of its charge, nexus, and the reasonableness of the penalty. ID at 7-13, 32-36. He also held that the appellant did not prove retaliation for EEO activity or a violation of her due process rights. ID at 24-32. As to the appellant's whistleblower reprisal claim, the administrative judge held that the appellant's December 5, 2013 and September 11, 2014 disclosures were not protected. ID at 15-17. He reasoned that she reported alleged

wrongdoing by the Navajo Nation, rather than the Federal Government. ID at 16-17. However, he found that her OIG complaints and OSC complaint constituted protected activity. ID at 17-18. The administrative judge also found that the appellant proved that this activity was a contributing factor in her removal, and the agency proved by clear and convincing evidence that it would have removed her absent this activity. ID at 18-24.

¶14      The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 3. The agency has responded to the petition for review, and the appellant has replied. PFR File, Tabs 5-6.

## ANALYSIS

### A disclosure of wrongdoing committed by a non-Federal Government entity is protected only when the Government's interests and good name are implicated in the alleged wrongdoing.[3]

¶15      In order to prevail on her whistleblower retaliation affirmative defense, an appellant must prove by preponderant evidence that she made a whistleblowing disclosure as described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity as described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action outlined in 5 U.S.C. § 2302(a)(2)(A).[4] 5 U.S.C. § 1221(e)(1); *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 12 &

---

[3] On review, the parties do not challenge the administrative judge's determination that the agency proved the charge and its nexus to the efficiency of the service and that the penalty of removal was within the tolerable limits of reasonableness. PFR File, Tabs 3, 5-6. They also do not dispute that the appellant failed to prove her claims of EEO reprisal and a due process violation. *Id.* We discern no basis to disturb the administrative judge's finding regarding the due process violation claim. Moreover, because the appellant does not challenge the administrative judge's determination that the appellant did not prove her affirmative defense of retaliation for EEO activity, we do not further address this finding here.

[4] It is undisputed that the appellant's removal, which the agency took under chapter 75, is a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iii).

n.1 (2015).    Regarding her December 5, 2013 and September 11, 2014 disclosures, the appellant argues on review that there is no statutory provision requiring that a violation of law, rule, or regulation be committed by agency personnel.    PFR File, Tab 3 at 10, 13-14.    She contends that she reasonably believed that her disclosures evidenced a violation of law, rule, or regulation.  *Id.* at 12-14.

¶16      The relevant statute provides that an agency may not remove an employee because of "any disclosure" that the employee reasonably believes evidences "any violation of any law, rule, or regulation."   5 U.S.C. § 2302(b)(8).  The Board has held that a disclosure of wrongdoing committed by a non-Federal Government entity may be protected only when the Government's interests and good name are implicated in the alleged wrongdoing, and the employee shows that she reasonably believed that the information she disclosed evidenced that wrongdoing.  *Miller v. Department of Homeland Security*, 99 M.S.P.R. 175, ¶ 12 (2005); *Arauz v. Department of Justice*, 89 M.S.P.R. 529, ¶¶ 6-7 (2001).

¶17      Relying on *Arauz*, 89 M.S.P.R. 529, ¶ 7, and *Aviles v. Merit Systems Protection Board*, 799 F.3d 457, 464-66 (5th Cir. 2015), the administrative judge found that the appellant's December 5, 2013 and September 11, 2014 disclosures were not protected because she alleged wrongdoing by the Navajo Nation, rather than agency personnel. ID at 16-17.  The appellant argues that the administrative judge erred in relying on *Arauz* because that decision was issued before the enactment of the Whistleblower Protection Enhancement Act of 2012 (WPEA), which reversed some judicially created limitations on whistleblower protections. PFR File, Tab 3 at 13.

¶18      In *Aviles*, 799 F.3d at 464-66, which was decided after enactment of the WPEA, the U.S. Court of Appeals for the Fifth Circuit (Fifth Circuit) agreed with the Board and held that, when enacting the WPEA, "Congress did not intend to protect disclosures of purely private wrongdoing."  As the appellant notes, *Aviles* is not necessarily binding on the Board.  PFR File, Tab 3 at 13.  Prior to late

2012, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) generally was the Board's sole reviewing court in cases of alleged whistleblower reprisal. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10 n.6 (recognizing that prior to the passage of the WPEA, Pub. L. No. 112-199, 126 Stat. 1465, 1469, the Board was bound by the decisions of the Federal Circuit in adjudicating whistleblower reprisal claims). However, since that time, pursuant to 5 U.S.C. 7703(b)(1)(B), an appellant who seeks review of a final Board decision and limits any prohibited personnel practice claims to those arising under 5 U.S.C. § 2302(b)(8) and (b)(9)(A)(i), (B), (C), and (D) may seek review in any Federal circuit court of appeal of competent jurisdiction. 5 U.S.C. § 7703(b)(1)(B); *Chambers*, 2022 MSPB 8, ¶ 10 n.6.

¶19 Yet the appellant has pointed to no other circuit which has held contrary to the Board's precedent in *Arauz*. The Federal Circuit recently had the opportunity to do so, but in a nonprecedential decision instead agreed that disclosures of purely private wrongdoing are not covered by 5 U.S.C. § 2302(b)(8), and in fact cited *Aviles* in its decision. *Oram v. Merit Systems Protection Board*, No. 2021-2307, 2022 WL 866327 (Fed. Cir. Mar. 23, 2022).[5] In the absence of any higher authority rejecting the Board's position in *Arauz*, we decline to revisit it here.

<u>The appellant made disclosures regarding alleged wrongdoing by the Navajo Nation Forestry Department that implicated the Federal Government's interests and good name.</u>

¶20 We now consider whether the Government's interests and good name were implicated in the alleged wrongdoing. In *Arauz*, 89 M.S.P.R. 529, ¶¶ 5-7, the Board found that the Government's interests and good name were implicated in a

---

[5] The Board may rely on nonprecedential decisions of the Federal Circuit when we find their reasoning persuasive, as we do here. *Alegre v. Department of the Navy*, 118 M.S.P.R. 424, ¶ 15 n.2 (2012).

disclosure of a non-Governmental organization's alleged violation of state voter registration laws because the organization was performing functions within the scope of a Government program and the agency was in a position to influence or exercise oversight over the organization's performance of those functions. Similarly, in *Johnson v. Department of Health & Human Services*, 93 M.S.P.R. 38, ¶¶ 9-11 (2002), the Board found that the Government's interests and reputation were implicated by the appellant's disclosure of alleged contract violations and illegal employment practices by a Government contractor because the appellant claimed that agency officials ignored the contractor's conduct. Finally, in *Miller*, 99 M.S.P.R. 175, ¶¶ 12-13, the Board found that the Federal Government's interests and good name were implicated by an appellant's disclosure that state officials allegedly used excessive force because the alleged wrongdoing occurred during the joint execution of a search warrant by those officials and the agency.

¶21     With this guidance, we consider the appellant's December 2013 and September 2014 disclosures in turn. As explained below, we conclude that the appellant's disclosures concerned purported wrongdoing by the Navajo Nation that implicated the Federal Government's interests, reputation, and good name.

> *The appellant's December 5, 2013 disclosures implicated the Federal Government's interests and good name.*

¶22     The administrative judge acknowledged that allegations of private wrongdoing may constitute protected whistleblowing, citing the Board's decision in *Arauz* and the Fifth Circuit's decision in *Aviles*, but determined that the December 5, 2013 memoranda regarding the Navajo Nation Forestry Department's securing of a timber harvesting permit were not protected because the appellant had not explained why she believed that agency personnel were violating rules or abusing authority, or made specific allegations of wrongdoing by agency officials. ID at 16-17. Instead, the administrative judge characterized the memoranda as expressing concerns about the Navajo Nation's conduct. ID

at 17. Consequently, he concluded that the appellant failed to show by preponderant evidence that she reasonably believed that she was disclosing any wrongdoing by agency personnel. *Id.*

¶23 The appellant argues on review that she reasonably believed the project along Highway 264 was covered by a 638 contract, and thus subject to the statutes and regulations concerning such projects. PFR File, Tab 3 at 12-13. We find that the appellant's December 2013 disclosures are protected because they implicate the Government's good name.

¶24 In 1868, the United States and the Navajo Tribe entered into an agreement that established a reservation covering, as relevant here, the area around Fort Defiance that was the subject of the appellant's disclosures. Treaty Between the United States and the Navajo Tribe of Indians, *ratified* July 25, 1868, 15 Stat. 667 (the Treaty of 1868); *see McClanahan v. State Tax Commission of Arizona*, 411 U.S. 164, 173-75 (1973) (explaining that the Treaty of 1868 set aside a reservation for the Navajo "under general [F]ederal supervision"). The Federal Government, acting through the agency, generally manages and has pervasive control over Indian timber, land, and forests on reservation land. *See United States v. Mitchell*, 463 U.S. 206, 207-09, 219-23 (1983) (discussing this control in the context of the Government's 1861 treaty with the Quinault and Quileute Tribes, citing, among other authorities, 25 U.S.C. §§ 405-407, 466; 25 C.F.R. part 163). Similarly, the agency has authority to grant rights-of-way through reservation lands with Tribal or individual owner consent. *Id.* at 223 (citing 25 U.S.C. §§ 323-25; 25 C.F.R. part 169). This control creates a trust relationship and resulting fiduciary obligation on the part of the Government toward the Indian people as to the Government's "management and operation" of these reservation resources. *Id.* at 224-26; *see Navajo Nation v. U.S. Department of the Interior*, 26 F.4th 794, 800, 809-12 (9th Cir. 2022) (finding that, under the Treaty of 1868, the United States had an implied trust obligation toward the Navajo Nation as it concerns its rights to access water from the Colorado River,

which is "appurtenant to the Nation"), *cert. granted*, 143 S. Ct. 398 (2022) (No. 22-51).

¶25    Although the appellant believed that the timber harvested along Highway 264 was subject to a 638 contract, she was mistaken.   IAF, Tab 5 at 19-23.  Instead, the area in question was subject to a right-of-way, which gave ADOT the right to remove the trees.  *Id.* at 38; HT at 170-71 (testimony of the appellant's first-level supervisor).  As discussed above, the agency has a fiduciary duty concerning the assets on the reservation land generally and the authority to award rights-of-way, such as the right-of-way that the agency provided to ADOT along Highway 264.   HT at 151, 170 (testimony of the appellant's first-level supervisor); *Mitchell*, 463 U.S. at 223-26; *e.g.*, 25 U.S.C. §§ 311, 323-35; 25 C.F.R. §§ 169.5-169.6.   Accordingly, the appellant's questioning of the activities along Highway 264 and her suggestion that the Navajo Nation Forestry Department had a conflict of interest in obtaining the timber from those activities implicated the agency's reputation in its oversight of Indian resources and land. HT at 151 (testimony of the appellant's first-level supervisor); *see Arauz*, 89 M.S.P.R. 529, ¶ 7.

> *The appellant's September 11, 2014 disclosure implicated the Government's interests and good name.*

¶26    The administrative judge concluded that the appellant's September 11, 2014 email to a Navajo Nation Forest Manager raising concerns about the Navajo Nation's proposed tree harvesting project did not constitute whistleblowing.  ID at 17.  He reasoned that the appellant failed to show that agency personnel were violating, or were complicit in the alleged violations of, NEPA.   ID at 17. We disagree.

¶27    By statute, the Federal Government has a trust responsibility for Indian forest lands.   25 U.S.C. § 3101(2).   Only the Secretary of the Interior or her designee can approve management activities on these lands, including harvesting timber and forest thinning.   25 C.F.R. §§ 163.1, 163.10; BIA, Indian Forest

Management Handbook 53 IAM 2-H, *Forest Management Planning*, §§ 2.1, 2.4 (2009), https://www.bia.gov/sites/default/files/dup/assets/public/raca/handbook/pdf/53-IAM-2H-Forest-Management-Planning-HB_OIMT.pdf. In approving such activities, the Secretary must ensure the activities are compliant with applicable environmental laws, including NEPA. 25 C.F.R. § 163.34. Thus, the agency is responsible for ensuring that management activities on Indian forest lands are NEPA compliant.

¶28      Although not expressly stated in the record, it appears that the appellant's September 11, 2014 disclosure concerned activities on Indian forest land. HT at 116 (testimony of a BIA Navajo Region Tribal Operations Specialist), 151-52, 210 (testimony of the appellant's first-level supervisor). The BIA's Navajo Region is responsible for providing services related to the activities in question, including reviewing and approving permits for harvesting timber. IAF, Tab 5 at 96-97; 25 C.F.R. §§ 163.1, 163.3, 163.10, 163.26.

¶29      In her September 2014 email, which the appellant sent to a Navajo Nation Forest Manager pursuant to her role as the AOTR for a proposed tree harvesting project on Navajo Nation land in the Assayi Lake fire area, she expressed concerns that the project did not comply with environmental laws and regulations. IAF, Tab 5 at 39-40. She put the Forest Manager "on notice" that all harvesting activities were obligated to meet the requirements under NEPA and other Federal environmental laws. *Id.* The appellant also noted that during a previous meeting with the Forest Manager, he seemed "agitated" about the appellant's request for additional information to address her concerns about the project plans. *Id.*

¶30      In a September 15, 2014 response to the appellant's email, the awarding official informed the appellant that if there were any potential problems that "threaten the performance of the contract, the AOTR must immediately contact the [awarding official] so that remedial measures may be taken." *Id.* at 45. By suggesting the BIA may need to take actions, the awarding official acknowledged

that the BIA's interests and reputation in overseeing the proposed harvesting project were implicated by the appellant's disclosure. *Id.* at 45.

¶31 Based on the foregoing, we conclude that the administrative judge erred when he determined that the appellant's disclosures concerned only the Navajo Nation. ID at 16-17. Instead, we conclude that, given the BIA's fiduciary relationship with the Navajo Nation, as well as the oversight role and the significant amount of control it had over the Navajo Nation Forestry Department's functions, the appellant's disclosures implicated the Government's reputation and good name. *Miller*, 99 M.S.P.R. 175, ¶¶ 12-13; *Johnson*, 93 M.S.P.R. 38, ¶¶ 10-11; *Arauz*, 89 M.S.P.R. 529, ¶ 7.

The appellant reasonably believed that her December 5, 2013 disclosures evidenced wrongdoing under 5 U.S.C. § 2302(b)(8).

¶32 Because the administrative judge found that the appellant's disclosures did not implicate the Federal Government, he did not address the reasonableness of her belief that her disclosures evidenced wrongdoing under 5 U.S.C. § 2302(b)(8). ID at 16. We find that the appellant proved she reasonably believed her December 2013 disclosures evidence wrongdoing, but did not prove the same regarding her September 2014 disclosure.

*The appellant's December 5, 2013 disclosures were protected.*

¶33 As to her December 2013 disclosures, the appellant argues on review that she reasonably believed the "timber harvesting" along Highway 264 violated the statutory and regulatory requirements concerning the administration of the agency's 638 contract with the Navajo Nation. PFR File, Tab 3 at 10-14, Tab 6 at 7-10. As previously discussed, the appellant's belief that improper harvesting was occurring rested on her faulty assumption that the land being harvested was subject to a 638 contract, when it was instead being harvested as a part of a right-of-way agreement with ADOT. Nevertheless, there is no dispute that at the time the appellant drafted the memoranda that made this disclosure, it was her

belief that the land at issue was subject to a 638 contract. IAF, Tab 5 at 19-23, HT at 47-49 (testimony of the appellant).

¶34    The appellant's first-level supervisor also appears to have initially believed that the land at issue may have been subject to a 638 contract, and only discovered that it was not after the appellant made her disclosure. In her testimony, the appellant's first-level supervisor acknowledged that, after the appellant issued the December 2013 memoranda, BIA staff in charge of 638 contracts and BIA managers "got together . . . to figure out what was going on" regarding the tree harvesting occurring on route 264. HT at 169. She indicated that BIA management was concerned with potential regulatory violations and also whether the Navajo Nation violated their 638 contract with the Federal Government by issuing a permit for the tree harvesting. HT at 169-70 (testimony of appellant's first-level supervisor). She further testified that only after the BIA reviewed the contract documents and additional documents provided by ADOT did it discover that the land was the subject of a right-of-way agreement with ADOT and not subject to a 638 contract between the BIA and the Navajo Nation. *Id.*

¶35    The test for assessing the reasonableness of an appellant's belief that her disclosure was protected is not based on after-acquired information; rather, under the statute, the test for a protected disclosure is whether the appellant had a reasonable belief that she was disclosing a violation of law, rule, or regulation at the time she made the disclosure, not in light of events or conversations occurring thereafter. *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 13 (2015) (citing 5 U.S.C. § 2302(b)(8)). As explained above, the appellant and agency management believed at the time the appellant sent her December 2013 memoranda that the trees being cut down were on land covered by a 638 contract. Further, the appellant testified without contradiction that, under this contract, the Navajo Nation was required to follow all BIA regulations. HT at 379-80 (testimony of the appellant).

¶36    One of the requirements she identified in her December 2013 memoranda was that the BIA regional director sign off on all timber sale permits.  IAF, Tab 5 at 21.  Indeed, an agency regulation and an agency handbook provision mandate that "permits [for removal of forest products] must be approved by the Secretary [of the Interior]."  25 C.F.R. § 163.26(a); *see* IAF, Tab 5 at 28 (reflecting the same requirement in an agency handbook).  Therefore, we find that, at the time the appellant wrote the memoranda, it was reasonable for her to conclude that the harvesting of timber with a permit that was not signed by the agency violated this requirement.  IAF, Tab 5 at 21, 24, 26.  We conclude that the appellant made a disclosure of conduct that she reasonably believed was a violation of law, rule, or regulation under 5 U.S.C. § 2302(b)(8).

*The appellant's September 11, 2014 disclosure was not protected.*

¶37    The appellant also argues on review that she reasonably believed that her September 2014 disclosure evidenced a violation of NEPA.  PFR File, Tab 3 at 13-14.  As discussed above, NEPA compliance is required for timber harvesting on Indian forest lands.  Thus, we find that the content of the appellant's disclosure could evidence a violation of law, rule, or regulation.  *See Bump v. Department of the Interior*, 69 M.S.P.R. 354, 361-62 (1996) (finding that an appellant reasonably believed a proposed timber sale potentially violated Federal laws, including NEPA).

¶38    The appellant stated in her September 2014 email that "NEPA issues" existed with respect to the Navajo Nation Forestry Department's proposed timber harvesting activity on a portion of the reservation.  IAF, Tab 5 at 39-40.  The Board has found that an employee need not wait until an actual violation of law occurs for her disclosure to be protected under whistleblower reprisal statutes.  *Ward v. Department of the Army*, 67 M.S.P.R. 482, 488 (1995).  Such a requirement would mean losing an opportunity to avert wrongdoing and would have a chilling effect on whistleblowing.  *Id.*  When, as here, a disclosure concerns a potential violation of law, as opposed to an event that has already

taken place, an appellant must prove that she reasonably believed the potential wrongdoing was real and immediate. *Bump*, 69 M.S.P.R. at 361; *Ward*, 67 M.S.P.R. at 488-89. In order to strike a balance between preventing Government wrongdoing on the one hand and encouraging "healthy and normal" discussions of "possible courses of action" that may avoid such wrongdoing on the other hand, the determination of whether the disclosure is protected "depends on the facts." *See Reid v. Merit Systems Protection Board*, 508 F.3d 674, 678 (Fed. Cir. 2007).

¶39    We find, under the circumstances presented here, that the appellant has failed to prove that she reasonably believed any NEPA violation was real and imminent. Although she stated at one point in her September 2014 email that the Navajo Nation Forestry Department "may be harvesting trees," it appears from the context of her email and other statements that she was only referencing a proposed tree harvesting project that was under consideration, rather than activity that was already taking place or imminently about to occur. IAF, Tab 5 at 39-40.

¶40    Further, the appellant's email reflects that over the course of August 2014, she had been discussing the potential harvesting with the Navajo Nation Forest Manager and others, and had requested maps of the affected area. *Id.* Her September 2014 email was a summary of those prior discussions and a follow up request for maps. *Id.* She did not state in her email that she believed harvesting had begun or would begin before NEPA compliance was assured, *id.*, nor did she testify at the hearing regarding the situation leading to her September 2014 email. There is no evidence in the record supporting the conclusion that the harvesting was about to occur or that the appellant reasonably believed it was.

¶41    Moreover, within an hour of the appellant sending her September 2014 email to the Navajo Nation Forest Manager, he responded by providing a proposal for a portion of the harvesting. *Id.* at 39. He indicated that other activities were in "the planning stages and [were] currently being GPS'd," presumably in response to the appellant's request for maps. *Id.* His response supports the

conclusion that the Navajo Nation was in the process of discussing the projects with the BIA and intended to comply with the law. Because the appellant has neither claimed, nor provided evidence, that she reasonably believed a NEPA violation of law was real and imminent, we find that she failed to prove her September 2014 disclosure was protected.

The appellant established that her disclosures were a contributing factor in the agency's decision to remove her.

¶42     The administrative judge found that the appellant proved her OSC and OIG complaints were contributing factors in her removal. ID at 18-19. Because the administrative judge determined that the appellant's December 5, 2013 memoranda were not protected disclosures, he did not make any findings concerning whether the appellant met her burden to prove that they were a contributing factor in the agency's removal decision. ID at 16-17. We conclude that she did.

¶43     To prove that a disclosure was a contributing factor in a personnel action, the appellant need only demonstrate that the fact of, or the content of, the disclosure was one of the factors that tended to affect the personnel action in any way. *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 10 (2003). The knowledge-timing test allows an appellant to demonstrate that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*, ¶ 11.

¶44     Here, the timing prong of the knowledge-timing test is met because the agency removed the appellant just over 1 year after she submitted the December 5, 2013 memoranda. *See Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 25 (2016) (observing that a personnel action that occurs within 2 years of an appellant's disclosure satisfies the timing prong of the

knowledge-timing test).  Further, the deciding and proposing officials were aware of the December 2013 disclosures prior to issuing the proposal and removal notices.  IAF, Tab 5 at 5, 19-21, 39-40, 43-44; HT at 164-65 (testimony of appellant's first-level supervisor), 313-14 (testimony of the deciding official). Accordingly, we conclude that the appellant has proven contributing factor.

Remand is necessary for the administrative judge to conduct a new *Carr* factors analysis.

¶45        Because the appellant met her prima facie burden of proving that she made a whistleblowing disclosure that was a contributing factor in the agency's decision to remove her, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's whistleblowing.  5 U.S.C. § 1221(e)(2); *Scoggins*, 123 M.S.P.R. 592, ¶ 26.  In determining whether an agency has shown by clear and convincing evidence that it would have taken the personnel action in the absence of the protected activity, the Board will consider all of the relevant factors, including the following factors ("*Carr* factors"):  (1) The strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated.  *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

¶46        The administrative judge found that the agency met its burden to prove that it would have removed the appellant absent her OIG and OSC complaints.  ID at 19-22.  As to the appellant's December 2013 and September 2014 disclosures, he separately stated that, even if protected, the agency had no motive to retaliate and the proposing and deciding officials credibly testified that they removed the appellant due to her misconduct.  ID at 22.  The appellant argues on review that

the administrative judge improperly excluded from his *Carr* factor analysis a consideration of her protected disclosures. PFR File, Tab 3 at 14-17. In light of our findings above, we agree and remand the appeal for findings on this issue.

¶47      On remand, the administrative judge should conduct a new analysis of whether the agency met its burden to prove by clear and convincing evidence that it would have removed the appellant in the absence of her protected December 2013 disclosures and her protected activities. In conducting his analysis, the administrative judge should consider the agency's combined motive to retaliate based on all of the appellant's protected activities and disclosures, and reweigh all the *Carr* factors in light of the totality of the appellant's protected activities and disclosures. *See Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012) (finding that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate").[6]

The appellant has not shown that the agency engaged in witness intimidation during the hearing.

¶48      The appellant contends that she felt intimidated by the presence of a human resources employee at the hearing. PFR File, Tab 3 at 23-24. Although the appellant testified that she felt intimidated at the hearing, HT at 368-69

---

[6] In conducting his analysis of the third *Carr* factor, whether the agency took similar actions against similarly situated nonwhistleblowers, the administrative judge found the agency treated other employees similarly to the appellant. ID at 23. However, one of the comparators identified by the agency, an agency manager who was removed for sending server or router information to his personal email account and misrepresenting himself as a Government official, had engaged in protected activity. HT at 362-63, 365, 367 (testimony of a human resources employee); *Austin v. Department of the Interior*, MSPB Docket No. DE-0752-13-0104-I-3, Initial Decision at 2-6, 21-22 (Apr. 21, 2017). Consequently, this employee was not a proper comparator under the third *Carr* factor. *See Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018) (finding that the Board erred in considering the treatment of similarly situated whistleblowers under the third *Carr* factor). Evidence regarding his treatment may be relevant to *Carr* factor 2. *Id.* On remand, the administrative judge should take this fact into consideration in reanalyzing the *Carr* factors.

(testimony of the appellant), she has not alleged or shown that other witnesses felt intimidated. In any event, for the Board to find that an agency official intimidated a witness, an appellant must present evidence showing that the official threatened the witness with adverse consequences, such as disciplinary action, or suggested that the witness not testify or not testify truthfully. *Gregory v. Federal Communications Commission*, 84 M.S.P.R. 22, ¶ 17 (1999), *aff'd per curiam*, 232 F.3d 912 (Fed. Cir. 2000) (Table). The appellant has made no such showing.

## ORDER

¶49    We remand the appeal to the Denver Field Office for further adjudication of the appellant's whistleblower reprisal claim consistent with this Opinion and Order. To the extent appropriate, the administrative judge may adopt his prior findings regarding the appellant's removal and the remaining affirmative defenses in the remand initial decision.

FOR THE BOARD:


/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.