# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MICHELLE MATHIS,

   Appellant,

  v.

DEPARTMENT OF THE NAVY,

   Agency.

DOCKET NUMBER
DC-1221-24-0522-W-2

DATE:  January 26, 2026

# THIS ORDER IS NONPRECEDENTIAL[1]

Michelle Mathis, Hampton, Virginia, pro se.

Alice Bartek-Santiago, Jannika Cannon, and Larra Pleasant,
 Washington, D.C., for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction.  For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision and FIND that the appellant established jurisdiction over her whistleblower reprisal claim as to the threatened

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

termination, VACATE the initial decision's finding that the appellant did not nonfrivolously allege that her resignation was involuntary, and REMAND the appeal for a hearing and further adjudication consistent with this Remand Order.

## BACKGROUND

The appellant was appointed to a GS-13 Supervisory Attorney Adviser position with the agency, effective June 20, 2023. *Mathis v. Department of the Navy*, MSPB Docket No. DC-1221-24-0522-W-1, Initial Appeal File (IAF), Tab 7 at 44. According to the Standard Form 50 documenting her appointment, her appointment was subject to a 1-year probationary period for assignment to a supervisor or managerial position.[2] *Id.* The agency terminated the appellant during her probationary period and then granted her request to resign, effective November 17, 2023. IAF, Tab 4 at 113-14, Tab 7 at 19.

In December 2023, the appellant filed a whistleblower reprisal complaint with the Office of Special Counsel (OSC). IAF, Tab 4. In February 2024, OSC closed and then reopened its investigation into the complaint. IAF, Tab 1 at 20, 37. On May 3, 2024, the appellant filed the instant IRA appeal, which the administrative judge dismissed without prejudice for the appellant to refile after she had fully exhausted her remedies before OSC. IAF, Tab 9, Initial Decision (ID) at 1, 3. The record does not show what final action, if any, OSC took with respect to the complaint; however, at the time the appellant refiled her Board appeal on July 26, 2024, more than 120 days had passed since OSC reopened its investigation. *Mathis v. Department of the Navy*, MSPB Docket No. DC-1221-24-0522-W-2, Appeal File (W-2 AF), Tab 8, Initial Decision (W-2 ID) at 2.

---

[2] The appellant alleged that she had 3 years of prior active-duty military service as a Judge Advocate General attorney in the same office. IAF, Tab 4 at 7, 24. However, it is undisputed that the appellant's appointment to the supervisory position she held during the time relevant to this appeal was her first civilian appointment and thus, subject to a probationary period. IAF, Tab 1 at 9-10, Tab 4 at 7, Tab 7 at 5; Petition for Review File, Tab 1 at 16.

In response to the administrative judge's orders to submit evidence and argument, IAF, Tabs 2, 8; W-2 AF, Tab 4, the appellant asserted that she raised the following alleged protected disclosures with OSC:  1) on August 11, 2023, the appellant emailed her first-level supervisor and other attorneys in her office regarding her concern that a paralegal had too much "control over [w]ill [s]ignings" after the paralegal rescheduled a meeting with the appellant's client, IAF, Tab 4 at 8, 43-44, 123; 2) on August 28, 2023, the appellant told her first-level supervisor that she was the only one speaking up about problems with the paralegal and that the supervisor needed to take the appellant's concerns seriously, *id.* at 8, 123; 3) on September 12, 2023, the appellant told her second-level supervisor that the paralegal needed "actual supervision" and that the appellant needed more effective control of legal processes in the office, *id.*; 4) in late September 2023, the appellant informed her first-level supervisor that the paralegal was attempting to enforce "legal calls beyond her expertise," such as refusing to draft a will planning for unborn children without a trust and trustee and insisting that a certain choice was always required in a will, *id.* at 9, 123; and 5) on October 27, 2023, the appellant and other attorneys complained to the appellant's first-level supervisor that the paralegal was drafting wills counter to their instructions and interfering with will executions, and the appellant told her first-level supervisor to "enforce the . . . limitations of [the paralegal's] authority as a [non-lawyer]," *id.* at 10, 123.  According to the appellant, she raised with OSC that in reprisal for her protected disclosures, the agency took the following personnel actions:   1) on November 9, 2023, the appellant's first- and second-level supervisors issued her a notice terminating her during her probationary period, *id.* at 11, 112-14, 123; and 2) on November 9, 2023, the appellant's first- and second-level supervisors granted her request to continue to work an additional week to transition her client files and resign, effective November 17, 2023, *id.* at 115-16, 123.

Without holding the appellant's requested hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 1 at 1; W-2 ID at 1, 8. He found that the appellant exhausted all her alleged protected disclosures, W-2 ID at 4, but he did not make a finding as to whether she exhausted her alleged personnel actions. He further found that the appellant did not nonfrivolously allege that she made a protected disclosure. *Id.* at 4-7. Lastly, he concluded that the appellant failed to nonfrivolously allege that she was subjected to a personnel action under the whistleblower protection statutes because her termination was never effected and her resignation was not involuntary. *Id.* at 7-8. He did not address whether the notice of termination constituted a personnel action.

The appellant has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. The agency responded, and the appellant replied.[3] PFR File, Tabs 4-5.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over an IRA appeal if an appellant proves that she exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action outlined in 5 U.S.C. § 2302(a). *Williams v. Department of Defense*, 2023 MSPB 23, ¶ 8; *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 12 (2016). If an

_____

[3] The agency moves to strike the appellant's reply as untimely filed. PFR File, Tab 6. Pursuant to 5 C.F.R. § 1201.114(e), a reply to a response to a petition for review must be filed within 10 days after the date of service of the response to the petition for review. Because the appellant's reply was untimely filed, we have not considered it. Nevertheless, on remand the appellant may submit her argument and any relevant evidence, consistent with the Board's regulations and the administrative judge's instructions.

appellant proves Board jurisdiction over an IRA appeal, she is entitled to a hearing on the merits of her claim, which she must prove by preponderant evidence. *Williams*, 2023 MSPB 23, ¶ 8; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). A nonfrivolous allegation is an assertion that, if proven, could establish the matter asserted. 5 C.F.R. § 1201.4(s); *see Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 5; *see also Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020) (stating that a nonfrivolous allegation is an allegation of "sufficient factual matter, accepted as true, to state a claim that is plausible on its face.").

<u>The administrative judge erred in finding that the appellant failed to nonfrivolously allege that she made protected disclosures under 5 U.S.C. § 2302(b)(8).</u>

On review, the appellant challenges the administrative judge's finding that she failed to nonfrivolously allege that she made protected disclosures under 5 U.S.C. § 2302(b)(8). W-2 ID at 4-7; PFR File, Tab 1 at 5-15. In finding that the appellant failed to meet her jurisdictional burden, the administrative judge determined that the appellant could not reasonably have believed that the paralegal, a non-attorney, was engaging in the unauthorized practice of law in violation of the Rules of Professional Conduct. W-2 ID at 5-6. On review, the appellant argues that the administrative judge failed to properly consider the "main concern" she raised in her disclosures—that her first-level supervisor, who was also the paralegal's supervisor, did not adequately supervise the paralegal, which allowed the paralegal to impermissibly interfere with the professional judgment of the attorneys in the office. PFR File, Tab 1 at 8-12. As explained below, we agree with the appellant and find that she nonfrivolously alleged that she reasonably believed her disclosures concerning the paralegal's conduct and her supervisors' failure to correct it implicated certain ethical obligations and otherwise evidenced wrongdoing under 5 U.S.C. § 2302(b)(8).

In the appellant's OSC complaint, she alleged that, between August and October 2023, she disclosed to her first- and second-level supervisors that the paralegal was substituting her judgment for that of the attorneys in the office and making "legal calls beyond her expertise" when drafting wills and assisting with will executions. IAF, Tab 4 at 8-11. For example, in late September 2023, the appellant complained to her first-level supervisor that the paralegal refused to draft wills "that would plan for the possibility of an unborn child to inherit, unless [the attorney] set-up a trust and picked a trustee" or the paralegal "unilaterally drafted [the wills] without including the unborn children" even though the appellant and other attorneys in the office had explained to the paralegal that a trust and trustee were not necessary in order to include language planning for unborn children and had instructed her to include it. *Id.* at 8-9, 34-37, 73-77. Indeed, in a September 28, 2023 email, in which the appellant's first-level supervisor was copied, the appellant stated that she and the paralegal had apparently already discussed this issue with the first-level supervisor, and he had agreed with the appellant and the other attorneys that including that language was acceptable. *Id.* at 76-77. Similarly, the appellant alleged that she complained to her first-level supervisor that the paralegal insisted that certain choices were always required in wills, despite the appellant and other attorneys in the office having previously instructed her otherwise. *Id.* at 8-9, 76-79. The appellant also submitted copies of emails between herself and the paralegal and another attorney and the paralegal, on which the appellant's first-level supervisor was copied, where they explained their belief that the paralegal's actions in not drafting the wills as they had instructed impacted their legal and ethical obligations to their clients. *See, e.g.*, *id.* at 73-87.

The appellant alleged that her first-level supervisor told her that she did not have supervisory authority over the paralegal and instructed her to let him address any issues that arose with the paralegal. *Id.* at 8. However, the appellant alleged that when she raised her concerns about the paralegal's actions with her first- and

second-level supervisors and told them that the paralegal "needed actual supervision," nothing was done to correct the paralegal's conduct. *Id.* at 8, 10. For instance, the appellant alleged that on October 27, 2023, during an attorney meeting, she and three other attorneys raised concerns with her first-level supervisor that the paralegal insisted on drafting wills the way she saw fit and counter to the instructions of the attorneys and that one attorney explained during the meeting that "she was the one who had met with the client, she . . . [was] the one to make this decision . . . and it was her bar license on the line." *Id.* at 10. The appellant alleged that, immediately after that meeting, she met with her first-level supervisor and told him to "enforce the . . . limitations of [the paralegal's] authority as a [non-lawyer]" and the supervisor said something to the effect of "[the paralegal is] not going anywhere" and the "unspoken lines of authority were obvious . . . ." *Id.*

The appellant further alleged that she reasonably believed that her disclosures of the above incidents implicated attorney ethical obligations, including those contained in the Judge Advocate General (JAG) Rules of Professional Conduct 5.3 and 5.4. *Id.* at 7, 13, 16-18. Specifically, Rule 5.4 concerns the professional independence of attorneys and states, in relevant part, "a civilian [U.S. Government] attorney . . . assigned to represent an individual member or employee of the Department of the Navy is expected to exercise unfettered loyalty and professional independence during the representation consistent with these Rules and remains ultimately responsible for acting in the best interest of the individual client." *Id.* at 17. Similarly, Rule 5.3 concerns the responsibilities regarding non-attorney assistants and states, in relevant part, "the senior supervisory attorney in an office . . . [and] a covered attorney having direct supervisory authority over the non-attorney shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of a covered attorney." *Id.* at 16.

Lastly, the appellant argues on review that the administrative judge erred in not considering her allegations and evidence that other attorneys in her office also shared her belief that the paralegal's conduct interfered with their professional judgment and their ethical obligations to their clients. PFR File, Tab 1 at 5-7. The administrative judge did not specifically address this evidence. Instead, he stated that "the appellant appears to have been frustrated that the paralegal was not more deferential to *her* instructions," which suggests he did not consider that her belief was shared by other attorneys in the office. W-2 ID at 6 (emphasis in original). Evidence that the appellant's belief was shared by other similarly situated employees may be of some relevance in determining whether her belief was reasonable. *Lachance v. White*, 174 F.3d 1378, 1380-81 (Fed. Cir. 1999); *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 22 (2015) (observing that a shared belief in an appellant's perception that her disclosure evidenced wrongdoing weighs in favor of finding that her belief was reasonable). As explained above, the appellant alleged and submitted evidence that, in late September and on October 27, 2023, at least three other attorneys in her office raised similar concerns with her and her first-level supervisor regarding the paralegal's actions in substituting her judgement for theirs when drafting wills and assisting with will executions and potential ethical implications. IAF, Tab 4 at 9-10, 82-87. Thus, we agree with the appellant that this supports a finding that her belief was reasonable.

We acknowledge that not all disagreements with supervisors concerning job duties are protected disclosures. *See Lachance*, 174 F.3d at 1381; *Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶ 13 (2011). However, when balanced against the appellant's allegations, we find that she has met her low jurisdictional burden and nonfrivolously alleged that she reasonably believed her disclosures that her supervisor was not adequately supervising a paralegal, whose conduct was interfering with the attorneys' professional judgment, evidenced one of the

categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *See Hessami*, 979 F.3d at 1369-70.

<u>The appellant nonfrivolously alleged that her protected disclosures were a contributing factor in at least her threatened termination.</u>

Having found that the appellant nonfrivolously alleged the protected disclosures set forth above, we turn now to whether she similarly nonfrivolously alleged that the disclosures were a contributing factor in a personnel action. To prove that a protected disclosure or activity is a contributing factor in a personnel action, the appellant need only demonstrate that the fact of, or the content of, the disclosure or activity was one of the factors that tended to affect the personnel action in any way. *Covington v. Department of the Interior*, 2023 MSPB 5, ¶ 43. One way an appellant may establish the contributing factor criterion is the knowledge/timing test, under which she submits evidence showing that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 63. The Board has held that a personnel action taken within approximately 1 to 2 years of an appellant's disclosures or activity satisfies the timing portion of the knowledge/timing test. *Id.*

The appellant exhausted with OSC that her disclosures caused the agency to issue a decision terminating her during her probationary period on November 9, 2023, which led her to resign. IAF, Tab 4 at 11, 112-16, 123. On review, the appellant challenges the administrative judge's finding that she did not nonfrivolously allege that she was subjected to a personnel action because her termination was never effected and her resignation was not involuntary. W-2 ID at 7-8; PFR File, Tab 1 at 15-21. She argues that the administrative judge erred in failing to consider that the notice of termination constituted a separate threatened personnel action. PFR File, Tab 1 at 16-17. We agree.

Section 2302(b)(8) of Title 5 includes a threatened personnel action and a termination of a probationary employee as a personnel action for purposes of 5 U.S.C. § 1221(a). *Zygmunt v. Department of Health and Human Services*, 61 M.S.P.R. 379, 381 (1994). Thus, a notice of termination during a probationary period that is not effectuated constitutes a threatened personnel action. 5 U.S.C. § 2302(a)(2)(A)(iii); *Zygmunt*, 61 M.S.P.R. at 381. Moreover, the appellant's allegation that her disclosures to her first- and second-level supervisors between August and October 2023 caused them both to issue her the notice of termination on November 9, 2023, is sufficient to meet her jurisdictional burden as to both prongs of the knowledge/timing test with respect to the notice of termination. IAF, Tab 4 at 8, 11, 114. Thus, we find that the appellant has established jurisdiction over her claim regarding a threatened termination and is entitled to a hearing on the merits. *Salerno*, 123 M.S.P.R. 230, ¶ 5.

Furthermore, as noted above, the administrative judge arrived at the conclusion that the appellant failed to nonfrivolously allege that she was subjected to a personnel action as to her involuntary resignation after incorrectly finding that the appellant failed to make a nonfrivolous allegation of a protected disclosure. W-2 ID at 4-7. The appellant alleged that her decision to resign was a direct result of the notice of termination that included, among other issues, the attorney meeting on October 27, 2023, when the appellant alleges she made disclosures, and cites the appellant's alleged "inability to work with the lead will paralegal." IAF, Tab 4 at 112-13; PFR File, Tab 1 at 17. In light of our decision to reverse the administrative judge's finding as to the protected disclosures and find that the appellant has nonfrivolously alleged that those disclosures were a contributing factor in her notice of termination, we vacate the administrative judge's finding regarding the involuntary resignation claim and remand this action for further adjudication. *See Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 13 (2014) (explaining that, because the Board vacated the administrative judge findings that the appellant had not made a nonfrivolous

allegation of a protected disclosure that was a contributing factor in several personnel actions leading up to his alleged involuntary resignation, remand of the involuntary resignation claim was appropriate); *Diefenderfer v. Department of Transportation*, 108 M.S.P.R. 651, ¶ 37 (2008) (explaining that, because the Board was remanding the appeal for further consideration of some of the appellant's reprisal claims, and because these claims were intertwined with her claim that her resignation was involuntary, further consideration of the latter claim was appropriate). Therefore, on remand the administrative judge shall reconsider his findings concerning the involuntary resignation claim in light of any further evidence and argument introduced on remand and shall make new findings concerning the appellant's claim in this regard. *See Colbert*, 121 M.S.P.R. 677, ¶ 12; *Diefenderfer*, 108 M.S.P.R. 651, ¶ 37.

## ORDER

For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD: _____
Gina K. Grippando
Clerk of the Board

Washington, D.C.