# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CINDY M. DABNER,

        Appellant,

      v.

ENVIRONMENTAL PROTECTION
  AGENCY,

        Agency.

DOCKET NUMBERS
CH-1221-17-0112-W-1
CH-1221-18-0483-W-1

DATE: May 3, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Chungsoo Lee</u>, Feasterville, Pennsylvania, for the appellant.

<u>Debra K. Smith</u>, Esquire, Chicago, Illinois, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1     The appellant has filed petitions for review of the initial decisions that dismissed her individual right of action (IRA) appeals for lack of jurisdiction. We JOIN the appeals for processing under 5 C.F.R. § 1201.36. For the reasons discussed below, we GRANT the appellant's petitions for review, VACATE the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

initial decisions, and REMAND these now joined appeals to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The appellant is a GS-13 Environmental Scientist for the agency. *Dabner v. Environmental Protection Agency*, MSPB Docket No. CH-1221-17-0112-W-1, Initial Appeal File (0112 IAF), Tab 1 at 1, Tab 16 at 4. In July 2016, the appellant filed a whistleblower complaint with the Office of Special Counsel (OSC), alleging that the agency took multiple personnel actions against her between 2013 and 2016, in retaliation for various disclosures that she had made between 2012 and 2016. 0112 IAF, Tab 1 at 5, 8-29. After 120 days had elapsed without a decision from OSC, on December 6, 2016, the appellant filed the instant IRA appeal. *Id.* at 4.

¶3 The administrative judge issued an order, notifying the appellant of her jurisdictional burden and ordering her to file evidence and argument on the issue. 0112 IAF, Tab 3. After the record on jurisdiction closed, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. 0112 IAF, Tab 24, Initial Decision (0112 ID). She found that the appellant failed to exhaust some of her claimed disclosures before OSC, and that the appellant failed to make a nonfrivolous allegation that any of her remaining disclosures were protected. 0112 ID at 3-10.

¶4 The appellant has filed a petition for review, disputing the administrative judge's jurisdictional analysis. *Dabner v. Environmental Protection Agency*, MSPB Docket No. CH-1221-17-0112-W-1, Petition for Review (0112 PFR) File, Tab 1. The agency has not filed a response.

¶5 Around the time that she filed her petition for review in the first appeal, on March 15, 2018, the appellant filed a second whistleblower complaint with OSC, again alleging that the agency retaliated against her for various protected disclosures. *Dabner v. Environmental Protection Agency*, MSPB Docket

No. CH-1221-17-0483-W-1, Initial Appeal File (0483 IAF), Tab 1 at 22-25. After 120 days had elapsed without a decision from OSC, on December 6, 2016, the appellant filed another IRA appeal. 0483 IAF, Tab 1.

¶6      The administrative judge notified the appellant of her jurisdictional burden in that appeal as well, and after the record on jurisdiction closed, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. 0483 IAF, Tab 32, Initial Decision (0483 ID). She found that the appellant was attempting to raise several claims that had already been litigated in her previous appeal, and that she was collaterally estopped from doing so. 0483 ID at 2-4. Regarding the appellant's remaining claims, she found that the appellant failed to exhaust her administrative remedies before OSC and failed to make a nonfrivolous allegation that her disclosures were protected. 0483 ID at 5-8.

¶7      The appellant has filed a petition for review of that initial decision as well, disputing the administrative judge's jurisdictional analysis. *Dabner v. Environmental Protection Agency*, MSPB Docket No. CH-1221-17-0112-W-1, Petition for Review (0483 PFR) File, Tab 1. The agency has not filed a response.

## ANALYSIS

¶8      To establish Board jurisdiction over an IRA appeal, an appellant must show by preponderant evidence that she exhausted her remedies before OSC, and make nonfrivolous allegations that: (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 6 (2014); 5 C.F.R. § 1201.57(a)(1). The U.S. Court of Appeals for the Federal Circuit has held that the Board may not deny jurisdiction by crediting the agency's interpretation of the evidence as to whether

the alleged disclosures fell within the protected categories or whether the disclosures were a contributing factor in an adverse personnel action. *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1368-69 (Fed. Cir. 2020).

The appellant has made a nonfrivolous allegation that she made two disclosures protected under 5 U.S.C. § 2302(b)(8)(A), and engaged in one activity protected under 5 U.S.C. § 2302(b)(9)(C) and another activity protected under 5 U.S.C. § 2302(b)(9)(D).

¶9        Because we have joined these appeals for processing, we find it unnecessary to decide whether the administrative judge correctly applied the doctrine of collateral estoppel in the second appeal.  Nevertheless, we agree with her that the ten different disclosures and activities that the appellant raised in these two appeals overlap to a certain extent.  0483 ID at 2-3.  We will address each of these matters in turn.

¶10       Under Disclosure 1, the appellant alleged that, between 2009 and 2010, she disclosed gross mismanagement and gross waste of funds, violations of 5 U.S.C. § 2302, Federal Acquisition Regulations, and Environmental Protection Agency Acquisition Regulations.  0112 IAF, Tab 9 at 4.  The administrative judge found that the appellant failed to exhaust her administrative remedies with respect to this claim because she did not raise it with sufficient specificity in her OSC complaint.  0112 ID at 5; 0112 IAF, Tab 1 at 20.

¶11       On petition for review, the appellant disputes the administrative judge's exhaustion analysis.  0112 PFR File, Tab 1 at 14-15.  However, regardless of whether the appellant exhausted her administrative remedies, we find that she has failed to make a nonfrivolous allegation that she made a protected disclosure.[2]

[2] The appellant alleged in her Board appeal that she disclosed these matters to the agency's Office of Inspector General, an activity which could be protected under 5 U.S.C. § 2302(b)(9)(C) regardless of whether it would otherwise be protected under 5 U.S.C. § 2302(b)(8).  0112 IAF, Tab 9 at 4.  However, the appellant made no such allegation before OSC, and we therefore find that she failed to exhaust her administrative remedies as to any such claim.  *See Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1036-37 (Fed. Cir. 1993).  While this case was pending on review, the U.S. Court of Appeals for the Seventh Circuit issued *Delgado v. Merit Systems*

The appellant's invocation of a series of statutes and regulations, without any explanation of why she believed that they had been violated or even a general description of the facts and circumstances supporting her belief, is the sort of vague and conclusory assertion that the Board has found does not constitute a nonfrivolous allegation.  0112 IAF, Tab 1 at 20, Tab 9 at 4; *see Francis v. Department of the Air Force*, 120 M.S.P.R. 138, ¶ 11 (2013); *Boechler v. Department of the Interior*, 109 M.S.P.R. 542, 548-49 (2008), *aff'd*, 328 F. App'x. 660 (Fed. Cir. 2009).  The appellant asserts that there is no requirement for her "to cite the correct and specific rules and regulations [she] is alleging to have been violated."  0112 PFR File, Tab 1 at 15.  In some situations this may be true, *see DiGiorgio v. Department of the Navy*, 84 M.S.P.R. 6, ¶ 14 (1999), but the appellant in this case has also failed to identify the Government actions that were the subject of her alleged disclosures.

¶12        Under Disclosure 2, the appellant alleged that, between 2012 and 2015, she reported to various individuals in the agency that the agency was granting unfair preference and advantages to Caucasian employees.  0112 IAF, Tab 9 at 4-5.  Although the appellant identified these disclosures in her OSC complaint, 0112 IAF, Tab 1 at 20, the administrative judge found that she failed to articulate the matter to OSC with sufficient clarity and precision so as to satisfy the exhaustion requirement, 0112 ID at 4-5.

¶13        On petition for review, the appellant argues that if she could have pursued discovery "she would have uncovered sufficient information and records to

---

*Protection Board*, 880 F.3d 913 (7th Cir. 2018), rejecting what it viewed as the "unusually stringent approach" of determining exhaustion "separately for *each fact* that an employee alleges rather than for each claim of protected disclosure or retaliation." *Id.* at 923 (emphasis in original).  Rather, the court concluded, the exhaustion requirement is satisfied if the appellant has provided OSC "sufficient information to permit a legally sophisticated reader to understand [the] charge of retaliation and to investigate further." *Id.* at 927.  We find that, to enable a legally sophisticated reader to understand a charge of retaliation for disclosing information to an Inspector General, an employee must at least inform the reader that she made such a disclosure.

establish a sufficient basis for OSC to pursue investigation." 0112 PFR File, Tab 1 at 14. However, because jurisdiction in an IRA appeal is established by making nonfrivolous allegations and the appellant here retained documentation concerning her communications with OSC, we find that the administrative judge did not abuse her discretion in deciding these appeals prior to the completion of discovery, and that the appellant cannot demonstrate that her substantive rights were thereby prejudiced. *E.g.*, 0112 IAF, Tab 1 at 8-45; *see Davis v. Department of Defense*, 103 M.S.P.R. 516, ¶ 13 (2006); *Sobczak v. Environmental Protection Agency*, 64 M.S.P.R. 118, 122 (1994).

¶14      Furthermore, even if the appellant had satisfied the exhaustion requirement, we find that the Board would still lack IRA jurisdiction over these disclosures because disclosures alleging race discrimination are covered under 5 U.S.C. § 2302(b)(1)(A), rather than 5 U.S.C. § 2302(b)(8). *Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 84 (2001); *Nogales v. Department of the Treasury*, 63 M.S.P.R. 460, 464 (1994). The Board has recently found that the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, 126 Stat. 1465, does not alter the longstanding principle that Title VII claims are excluded from coverage under the whistleblower protection statutes. *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 21-23.

¶15      Disclosures 3, 4, and 5 are similar in nature, and we will address them together. Disclosure 3 occurred during a November 2014 meeting, in which the appellant allegedly informed her first- and second-level supervisors that the Ohio Environmental Protection Agency (EPA) was failing to enforce environmental protection laws. 0112 IAF, Tab 9 at 3; 0483 IAF, Tab 4 at 4-5. Disclosure 4 concerns a September 25, 2015 report that the appellant created, again informing her first- and second-level supervisors of the Ohio EPA's failure to enforce environmental laws. 0112 IAF, Tab 9 at 5; 0483 IAF, Tab 4 at 5. Under Disclosure 5, the appellant alleged that, on November 3, 2015, she disclosed to her first- and second-level supervisors that the agency and the Ohio EPA were

duplicating inspections of Wright-Patterson Air Force Base, leading to a waste of time and money by the Ohio EPA.[3] 0112 IAF, Tab 9 at 5; 0483, Tab 4 at 6. The administrative judge did not separately address Disclosure 3 in her initial decision, but the appellant reasserts the matter on petition for review. 0112 PFR File, Tab 1 at 7. In her initial decision, the administrative judge considered Disclosures 4 and 5, but she found that the appellant failed to make a nonfrivolous allegation that they were protected. 0112 ID at 7-9.

¶16     The appellant disputes the administrative judge's findings on these disclosures, and we have considered her arguments. 0112 PFR File, Tab 1 at 18, 20-21. To the extent that the administrative judge's analysis took into account the agency's interpretation of the appellant's disclosures, we find that, under *Hessami*, 979 F.3d at 1368-69, this was error.[4] Nevertheless, we find that the appellant has failed to make a nonfrivolous allegation that any of these three disclosures were protected because she has not explained how the alleged shortcomings of the Ohio EPA might implicate the "interests and good name" of the Federal Government. *Ivey v. Department of the Treasury*, 94 M.S.P.R. 224, ¶ 11 (2003) (*citing Arauz v. Department of Justice*, 89 M.S.P.R. 529, ¶ 7 (2001)). Reports by Government employees concerning the possible breach of law or regulation by a private party generally do not constitute protected disclosures. *Willis v. Department of Agriculture*, 141 F.3d 1139, 1144 (Fed. Cir. 1998), *superseded by statute on other grounds as stated in Salazar v. Department of Veterans Affairs*, 2022 MSPB 42. The same principle applies to allegations of

---

[3] To the extent that the Disclosure 5 could be construed as pertaining to an alleged waste of Federal funds, we find that the appellant could not have had a reasonable belief in this regard. Under 42 U.S.C. § 6927(c), the Federal inspection of hazardous waste facilities is mandatory regardless of whether a state with overlapping jurisdiction might also choose to conduct an inspection. We find that the appellant's opinion that the agency wasted funds because it performed duties required by statute is not protected under 5 U.S.C. § 2302(b)(8).

[4] The administrative judge did not have the benefit of *Hessami* at the time she issued her initial decision.

wrongdoing by state and local governments. Such disclosures are protected only if they implicate the interests and good name of the Federal Government. *See Miller v. Department of Homeland Security*, 99 M.S.P.R. 175, ¶¶ 11-13 (2005) (finding that alleged misconduct by state law enforcement officers implicated the interests and good name of the Federal Government because the misconduct was alleged to have occurred in the presence of Federal agents during their joint execution of a warrant); *see also Covington v. Department of the Interior*, 2023 MSPB 5, ¶¶ 15-19 (finding that the WPEA did not change the longstanding principle that a disclosure of wrongdoing committed by a non-Federal Government entity may be protected only when the Federal Government's interests and good name are implicated in the alleged wrongdoing). We find nothing in the record to suggest that such a connection might exist in this case.

¶17    Under Disclosure 6, the appellant alleged that, in November 2015, she disclosed to two agency managers that her personal health information had been sent unencrypted to her supervisor, in violation of the Health Insurance Portability and Accountability Act (HIPAA) and the Privacy Act. 0112 IAF Tab 9 at 5; 0483 IAF, Tab 4 at 6. In her initial decision, the administrative judge found that the appellant failed to exhaust her administrative remedies with respect to this disclosure. 0112 ID at 6. She found that HIPAA and the Privacy Act cover certain transmissions of specific information by designated entities, and that the appellant, in her OSC complaint, failed to specify who sent what to whom and under what conditions, thus making it impossible for OSC to conduct any type of investigation. 0112 ID at 5-6. She further found that the appellant's attempt to elaborate on her disclosure during the jurisdictional response was insufficient to satisfy the exhaustion requirement. 0112 ID at 6.

¶18    On petition for review, the appellant disputes the administrative judge's exhaustion analysis. 0112 PFR File, Tab 1 at 15-16. However, regardless of whether the appellant might have exhausted this claim, we find that she failed to make a nonfrivolous allegation that she reasonably believed that the agency

violated HIPAA, the Privacy Act, or any other law, rule, or regulation. The appellant does not identify the party who sent the personally identifiable information to her supervisor, so it is impossible for us to determine whether the Federal Government might have initiated the transmission or whether the alleged wrongdoing was committed by a non-Federal entity, as with Disclosures 3, 4, and 5 discussed above. Moreover, even assuming that the Federal Government or an associated private entity transmitted this information, there is no indication that it was kept in a "system of records" so that its disclosure would be covered under the Privacy Act, *see* 5 U.S.C. § 552a(a)(5), (b), or that the entity that transmitted the information was a "covered entity" or "business associate" such that the transmission would be covered under the HIPAA Privacy Rule, *see* 42 U.S.C. § 1320d-1(a); 45 C.F.R. §§ 164.500(a), .502(a). The appellant's failure to describe the facts and circumstances of this alleged transmission of information prevents us from making a finding that she reasonably believed that it constituted any violation of any law, rule, or regulation.

¶19        Under Disclosure 7, the appellant alleged that, on November 17, 2015, she disclosed to her first- and second-level supervisors two violations of Federal environmental law at Wright-Patterson Air Force Base. 0112 IAF, Tab 9 at 5; 0483 IAF, Tab 4 at 6. The administrative judge found that the appellant cited Wright-Patterson Air Force Base for violating contingency plan emergency procedures and allowing hazardous waste to accumulate for too long, but that her supervisor disagreed with the citation and ordered the appellant to draft a report returning the base to compliance. 0112 ID at 9. Considering the supervisor's rationale, the administrative judge found that the appellant failed to make a nonfrivolous allegation that she reasonably believed that her disclosure evidenced a violation of law. 0112 ID at 9-10.

¶20        On petition for review, the appellant argues that the administrative judge erred in accepting her supervisor's assessment of the underlying violations. 0112 PFR File, Tab 1 at 20-21. We agree, and we find that the administrative judge

improperly considered the agency's interpretation of the evidence in assessing the appellant's prima facie case. *See Hessami*, 979 F.3d at 1368-69. Restricting our analysis to the appellant's pleadings and her OSC complaints, we find that she made a nonfrivolous allegation that her November 17, 2015 disclosure evidenced a violation of law. Although the appellant did not identify the particular laws that she alleges Wright-Patterson Air Force Base violated, she has at least identified the general nature of the alleged violations.[5] 0112 IAF, Tab 1 at 20. Considering the low standard for a nonfrivolous allegation and the appellant's professional expertise in this area, we find that she made a nonfrivolous allegation that she reasonably believed that such violations occurred. *See Embree v. Department of the Treasury*, 70 M.S.P.R. 79, 85 (1996) (considering the appellant's asserted subject matter expertise in finding that she made a nonfrivolous allegation of gross mismanagement in connection with agency collection efforts). We further find that the appellant raised this matter before OSC with sufficient clarity so as to satisfy the exhaustion requirement. 0112 IAF, Tab 1 at 20; 0483 IAF, Tab 1 at 23; *see Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (Fed. Cir. 1992) (stating that, to satisfy the exhaustion requirement of 5 U.S.C. § 1214(a)(3) in an IRA appeal, an appellant must inform OSC of the precise ground of her charge of whistleblowing, giving OSC a sufficient basis to pursue an investigation which might lead to corrective action).

¶21    Under Disclosure 8, the appellant claims that, on April 7, 2016, she filed a Form 12 disclosure with OSC, alleging that the agency was failing to protect confidential business information. 0112 IAF, Tab 1 at 32-45, 0483 IAF, Tab 4 at 6. The administrative judge found that the appellant failed to exhaust her

---

[5] The appellant states that her disclosure concerned violations of 42 U.S.C. § 6926 and 40 C.F.R. § 271.16(a)(3). 0112 IAF, Tab 9 at 8; 0483 IAF, Tab 1 at 23, Tab 4 at 6. This does not seem correct because those provisions set forth the requirements that states must meet in order to administer certain hazardous waste programs. They set forth no substantive rules to govern contingency plan emergencies or the accumulation of hazardous waste.

administrative remedies with respect to this disclosure because making disclosures to OSC's Disclosure Unit does not satisfy the exhaustion requirement under 5 U.S.C. § 1214(a)(3); 0112 ID at 3; *see Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 16 (2011). She further found that the appellant's whistleblower complaint did not list the filing of the Form 12 as a protected activity. 0112 ID at 3-4.

¶22    On petition for review, the appellant argues that she did, in fact, raise this matter in her whistleblower complaint. 0112 PFR File, Tab 1 at 10-11. The appellant is correct. 0112 IAF, Tab 1 at 24; 0483 IAF, Tab 1 at 23. Further, we find that she raised the matter with sufficient specificity so as to satisfy the exhaustion requirement. 0112 IAF, Tab 1 at 24; 0483 IAF, Tab 1 at 23. We also find that, regardless of whether the content of the Form 12 disclosure would otherwise be protected under 5 U.S.C. § 2302(b)(8), the disclosure itself constitutes protected activity under 5 U.S.C. § 2302(b)(9)(C). *See Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 12 (2016).

¶23    Under Disclosure 9, the appellant alleges that, in June or July 2016, she disclosed to her first- and second-level supervisors that they were committing a gross waste of funds by ordering the re-inspection of a hazardous waste facility that had already been issued an informal notice of violation. 0483 IAF, Tab 4 at 6. In her initial decision, the administrative judge found that the appellant failed to exhaust her administrative remedies as to this disclosure because, after the appellant filed her complaint, the OSC examiner emailed the appellant and asked her to provide a copy of the disclosure and any response she received, but the appellant merely responded, "I was removed from the case after emailing the EPA management of my whistleblower activity." 0483 ID at 5; 0483 IAF, Tab 4 at 12, 14.

¶24    On petition for review, the appellant disputes the administrative judge's exhaustion analysis. 0483 PFR File, Tab 1 at 12. We agree with the appellant that she exhausted her remedies with respect to this disclosure. Specifically, we

find that the appellant's failure to respond fully to OSC's follow-up inquiry is not dispositive of the issue, and in fact, it could be viewed as evidence that OSC actually followed up by investigating the matter. In any event, considering the contents of the whistleblower complaint itself, we find that the appellant provided OSC with the essential information about this disclosure, including approximately when she made it, the individuals who received it, and its subject matter. 0483 IAF, Tab 1 at 23.

¶25       We further find that the appellant has made a nonfrivolous allegation that she reasonably believed that her disclosure evidenced a gross waste of funds or an abuse of authority. For purposes of the Whistleblower Protection Act (WPA), a "gross waste of funds" is a more than debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the Government. *Embree*, 70 M.S.P.R. at 85. We find that the appellant has alleged sufficient facts that, if proven, could show that the agency spent time and resources conducting a completely unnecessary inspection of a hazardous waste facility that was of no benefit to the Government.[6] 0483 IAF, Tab 1 at 23, Tab 4 at 6. Under the WPA, an "abuse of authority" includes an arbitrary or capricious exercise of power by a Federal employee that results in personal gain or advantage to preferred other persons. *Sirgo v. Department of Justice*, 66 M.S.P.R. 261, 267 (1995). We find that the appellant has nonfrivolously alleged that her disclosure evidenced a reasonable belief that her supervisors abused their authority by ordering a second inspection in order to drag out proceedings and help the business being inspected

---

[6] The appellant does not specify how much she believes that this inspection cost to conduct, but she states that it was conducted by "a team of inspectors that included two attorneys." 0843 IAF, Tab 4 at 6. It would therefore appear that the cost of conducting this inspection was more than de minimis. *See* S. Rep. No. 112-155, at 8 (2012) ("[T]he Committee notes that, with respect to a disclosure of 'gross mismanagement,' a 'gross waste' of funds, or a 'substantial and specific danger to public health or safety,' the statute requires more than disclosure of de minimis wrongdoing."), *as reprinted in* 2012 U.S.C.C.A.N. 589, 596.

to avoid the enforcement action that should have been commenced against it. 0483 IAF, Tab 4 at 6.

¶26    Under Disclosure 10, the appellant alleges that, on October 7, 2016, she acquiesced to her supervisor's order to change her responses on a Technical Contact Review Checklist for an Ohio EPA grant work plan but signed the form "under duress" and wrote "[w]ill review the current budget upon receipt" in response to whether the budgeted costs were reasonable. 0483 IAF, Tab 4 at 7, 151-54, Tab 8 at 243-44. She provided a series of emails showing that her supervisor directed her to change her responses to reflect that the Ohio EPA had an approved quality assurance project plan and quality management plan and to "mark the grant as approved" to comport with the appellant's August 19, 2016 signed hard copy. 0483 IAF, Tab 4 at 151-52. The emails also reflect that the appellant informed her supervisor that she did not agree with the directive because she had not been provided the Ohio EPA's plans for review and did not believe that the budgeted cost associated with the project was reasonable. *Id*. at 151. The administrative judge found that the appellant failed to exhaust her administrative remedies on this matter, and she further found that the appellant failed to make a nonfrivolous allegation that her disclosure was protected because it represented a mere disagreement with her supervisor about the use of agency authority. 0483 ID at 7-8.

¶27    On petition for review, the appellant has filed a closeout letter from OSC, reflecting that after the initial decision in her second appeal was issued, OSC became aware of her October 7, 2016 disclosure and considered whether it might form the basis for a claim of whistleblower retaliation. 0483 PFR File, Tab 1 at 25-30. Under these circumstances, we find that the exhaustion requirement is satisfied. *See Atkinson v. Department of State*, 107 M.S.P.R. 136, ¶ 12 (2007) (accepting evidence that the appellant submitted for the first time on review showing that he exhausted his OSC remedy); *Hawkins v. Department of Commerce*, 98 M.S.P.R. 107, ¶¶ 7-8 (2004) (remanding an IRA appeal that

became ripe while pending on petition for review because OSC terminated its inquiry and informed the appellant of his Board appeal rights).

¶28     We agree with the administrative judge that the appellant failed to make a nonfrivolous allegation that this disclosure was protected under 5 U.S.C. § 2302(b)(8).  The appellant's own submissions show that this claimed disclosure did not contain any allegations of danger or Government wrongdoing.  Rather, it amounted to a disagreement with her supervisor's instructions to amend her Technical Contact Review Checklist to show approval of the Ohio EPA's project and management plans, and that the budgeted cost was reasonable.  0483 IAF, Tab 4 at 7, 151-52.  The Board has held that the statutory protection for whistleblowers is not a weapon in arguments over policy or a shield for insubordinate conduct.  *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015).  A disclosure that an agency decision or ruling is legally incorrect is not a disclosure protected under the WPA.  *O'Donnell v. Department of Agriculture*, 120 M.S.P.R. 94, ¶¶ 14-15 (2013), *aff'd*, 561 Fed. App'x 926 (Fed. Cir. 2014).  Even under the expanded protections afforded to whistleblowers under the WPEA, general philosophical or policy disagreements with agency decisions or actions are not protected unless they separately constitute a protected disclosure of one of the categories of wrongdoing listed in section 2302(b)(8)(A). *Webb*, 122 M.S.P.R. 248, ¶ 8; *see* 5 U.S.C. § 2302(a)(2)(D).  Here, the appellant's disagreements about whether to approve the Ohio EPA's plans and the reasonableness of the budgeted cost do not amount to a nonfrivolous allegation of any of the covered categories of wrongdoing.

¶29     Nevertheless, we find that the appellant has made a nonfrivolous allegation that her resistance to her supervisor's instructions constituted protected activity under 5 U.S.C. § 2302(b)(9)(D), which protects an employee from retaliation for "refusing to obey an order that would require the individual to violate a law, rule, or regulation."  Specifically, the appellant alleged that her supervisor instructed her to indicate on the Technical Contact Review Checklist that she had reviewed

the Ohio EPA's Quality Assurance Plan, when in fact, she had not. Based on these allegations, we find that the appellant has made a nonfrivolous allegation that she refused, at least initially, to follow an order that would require her to falsify a Federal document in violation of 18 U.S.C. § 1519.

¶30    It appears that the appellant may have made Disclosure 7 during the normal course of her duties to investigate and disclose noncompliance with Federal environmental laws. The WPEA added a provision providing that "[i]f a disclosure is made during the normal course of duties of an employee, the disclosure shall not be excluded from subsection [5 U.S.C. § 2302(b)(8)] if [the agency takes a personnel action] with respect to that employee in reprisal for the disclosure." WPEA, Pub. L. No. 112-199, § 101(b)(2)(C), 126 Stat. 1465, 1466 (codified at 5 U.S.C. § 2302(f)(2) (2012)). In December 2017, Congress amended section 2302(f)(2), adding language that the provision applies to disclosing employees "the principal job function of whom is to regularly investigate and disclose wrongdoing." National Defense Authorization Act for Fiscal Year 2018 (2018 NDAA), Pub. L. No. 115-91, § 1097(c)(1)(B)(ii), 131 Stat. 1283, 1618 (2017). The Board has held that the 2018 NDAA clarified the intent of 5 U.S.C. § 2302(f)(2) and therefore the language of that subsection as amended by the 2018 NDAA applies to all pending cases even if the events at issue occurred before the 2018 NDAA was enacted. *Salazar*, 2022 MSPB 42, ¶¶ 15-21.

¶31    The determination of whether a disclosure made in the normal course of duties is protected will often require factual findings best made after a more complete development of the record. Accordingly, that determination should be made as part of an appellant's prima facie case and not at the jurisdictional stage of an IRA appeal. Therefore, the administrative judge should provide the parties with an opportunity to provide evidence and argument on remand as to whether Disclosure 7 is covered by section 2302(f)(2). To the extent section 2302(f)(2) applies, the appellant will also have the burden of proving, as part of her prima

facie case, that the agency took the alleged personnel actions in reprisal for Disclosure 7.

¶32     In sum, we find that the appellant has made a nonfrivolous allegation that Disclosures 7 and 9 were protected under 5 U.S.C. § 2302(b)(8)(A), Disclosure 8 was protected under 5 U.S.C. § 2302(b)(9)(C), and Disclosure 10 was protected under 5 U.S.C. § 2302(b)(9)(D).  We also find that the appellant has exhausted her administrative remedies with respect to these matters.

<u>The appellant has made a nonfrivolous allegation that the agency took personnel actions against her.</u>

¶33     In these appeals, the appellant alleged that the agency took numerous retaliatory personnel actions against her between June 2013 and February 2018. 0112 IAF, Tab 9 at 6-8; 0483 IAF, Tab 4 at 7-9.  However, because the earliest disclosure still at issue, Disclosure 7, did not occur until November 17, 2015, we decline to consider any alleged personnel actions that occurred prior to that date. *See Mason*, 116 M.S.P.R. 135, ¶ 27 (finding that disclosures made after the personnel actions at issue could not have been contributing factors in those actions).  The alleged personnel actions that occurred during the relevant time period include the following:  (1) a 13-day suspension effective February 11, 2016[7]; (2) a June 1, 2016 order to undergo a psychiatric examination; (3) 13 nonselections for appointment, detail, transfer, and reassignment between June 20, 2016, and October 12, 2018; (4) denial of opportunity to participate in developmental programs on July 28, 2016, and January 11, 2017; (5) an October 17, 2017 performance evaluation; (6) a November 6, 2017 denial of monetary award; and (7) a significant change in working conditions.  0122 IAF, Tab 9 at 6-8; 0483 IAF, Tab 4 at 7-9.

---

[7] The appellant listed the 13-day suspension and the corresponding proposal as separate personnel actions.  0112 IAF, Tab 9 at 8.  Although the proposal could be viewed separately as a threatened personnel action, *see Bacas v. Department of the Army*, 99 M.S.P.R. 464, ¶ 5 (2005), we find it more appropriate under the circumstances of this case to consider it as part and parcel of the suspension itself.

¶34     Addressing each of these seven matters in turn, we find that the 13-day suspension would constituted a "personnel action" under 5 U.S.C. § 2302(a)(2)(A)(iii). Likewise, an order to undergo psychiatric examination is specifically listed as a personnel action under 5 U.S.C. § 2302(a)(2)(A)(x).[8] Nonselections and decisions on details, transfers, and reassignments also constitute personnel actions under 5 U.S.C. § 2302(a)(2)(A)(i) and (iv).[9] It appears that the two developmental programs that the appellant identified may have constituted training or education that could reasonably be expected to lead to a promotion or other favorable personnel action, and thus she has nonfrivolously alleged that the agency's denial of her participation in these programs would be covered under 5 U.S.C. § 2302(a)(2)(A)(ix). The performance evaluation would constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A)(viii), and the denial of a monetary award would likely constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A)(ix) as a "decision concerning pay and benefits." *See Hagen v. Department of Transportation*, 103 M.S.P.R. 595, ¶ 13 (2006).

¶35     Finally, a significant change in working conditions is a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii). The appellant did not explicitly claim that she was subjected to a significant change in working conditions, but she did allege that that she was denied the opportunity for telework and for flexibility in her work schedule. 0112 IAF, Tab 9 at 6, 8. Decisions about such matters are

---

[8] The agency disputes the appellant's characterization of this alleged personnel action, arguing that it was not a psychiatric examination but was instead "Communication Enhancement and Professional Development" training. 0112 IAF, Tab 15 at 15. This is a dispute of fact that cannot be appropriately resolved at the jurisdictional stage of the proceedings. *See Hessami*, 979 F.3d at 1369.

[9] The appellant characterizes some of these alleged personnel actions as denials of "transfer" and others as denials of "reassignment." 0843 IAF, Tab 4 at 7-9. In context, it appears that the appellant may not be using these terms as they are defined in 5 C.F.R. § 210.102(b). This distinction is not important at the jurisdictional stage, but it may become important during the merits phase to identify accurately the type of personnel action at issue.

not separately enumerated as personnel actions under 5 U.S.C. § 2302(a)(2)(A), but they can be part of a significant change in working conditions. *See Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 23 (2013) (finding that cancellation of the appellant's telework agreement constituted a significant change in working conditions). In determining whether an appellant has suffered a significant change in her working conditions, the Board must consider the alleged agency actions both collectively and individually and consider whether they have practical and significant effects on the overall nature and quality of her working conditions. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 16. It is not clear whether the appellant will ultimately be able to prove by preponderant evidence that she was subjected to a significant change in working conditions, particularly because the record does not reveal what her telework and scheduling options were prior to November 17, 2015. However, we find that her pleadings are sufficient to raise a nonfrivolous allegation of a personnel action within the Board's jurisdiction. In sum, we find that the appellant has made a nonfrivolous allegation that all of these matters, either alone or in combination, fit the definition of "personnel action" under 5 U.S.C. § 2302(a)(2)(A).

<u>The appellant made nonfrivolous allegations that Disclosures 7, 8, 9, and 10 contributed to these personnel actions.</u>

¶36    We next determine whether the appellant has made a nonfrivolous allegation that Disclosures 7, 8, 9, and 10 were contributing factors in these claimed personnel actions. The most common way of proving contributing factor is through the knowledge/timing test of 5 U.S.C. § 1221(e). *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 25 (2015). Under that test, an appellant can prove the contributing factor element through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*

¶37     In this case, the appellant alleges that her first- and second-level supervisors were both personally aware of Disclosures 7, 9, and 10, as of November 17, 2015, "June or July 2016, and October 7, 2016 respectively."[10] 0112 IAF, Tab 9 at 5; 0483 IAF, Tab 4 at 6-7.  The appellant further alleges that either one or both of these officials were involved in the 13 nonselections, the denial of opportunities to participate in developmental programs, the performance evaluation, and the denial of a monetary award.  0483 IAF, Tab 4 at 7-9.  The record also shows that the appellant's second-level supervisor was the proposing official in the 13-day suspension.  0112 IAF, Tab 20 at 68.  Although the alleged psychiatric examination appears to have been ordered by a different official, the Division Director, the record also shows that it was prompted by the first-level supervisor's complaints to the Division Director about the appellant's behavior after she returned from her 13-day suspension.  *Id.* at 77-79.  We find that the possibility that the appellant's first-level supervisor influenced the Division Director's decision is sufficient to raise a nonfrivolous allegation that the Division Director had constructive knowledge of the appellant's disclosure.  *See Marchese v. Department of the Navy*, 65 M.S.P.R. 104, 108-09 (1994).

¶38     Regarding scheduling and telework, the appellant does not identify the officials who were involved in making these decisions, and the documentary evidence fails to shed any light on the issue.  However, we take notice that a first- or second-level supervisor would typically be involved in decisions about scheduling and telework.  In light of the low evidentiary burden at this stage of the appeal, we find that the appellant's allegations are sufficient for us infer that

---

[10] We acknowledge that the imprecision with which the appellant pled the date of Disclosure 9 leaves an open question as to whether it could possibly have been a contributing factor in the June 20 and 22, 2016 nonselections for reassignment or the July 28, 2016 "notice of non nomination to the Capital Hill Program."  0483 IAF, Tab 4 at 6-8.  For jurisdictional purposes, however, we will give this pro se appellant the benefit of the doubt and assume that the disclosure predated all three of these claimed personnel actions.

her first- and second-level supervisors, officials with actual knowledge of her disclosure, at least influenced the scheduling and telework decisions. Thus, with respect to Disclosures 7, 9, and 10, the appellant has made a nonfrivolous allegation that the knowledge component of the knowledge/timing test is satisfied for every one of the alleged personnel actions.

¶39    Regarding the timing component, the record shows that the majority of these alleged personnel actions occurred within 1 or 2 years of the disclosures. 0112 IAF, Tab 9 at 8; 0483 IAF, Tab 4 at 7-9; *see Peterson v. Department of Veterans Affairs*, 116 M.S.P.R. 113, ¶ 16 (2011) (holding that personnel actions taken within 1 to 2 years of the protected disclosure satisfy the timing prong of the knowledge/timing test). Although a few of the claimed personnel actions occurred after this 2-year period, we nevertheless find that, for jurisdictional purposes, the timing component is satisfied for these as well because they could be fairly viewed as part of a continuum of related personnel actions that began shortly after the appellant's disclosures. *See Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 23 (2013). For these reasons, we find that the appellant has made a nonfrivolous allegation that Disclosures 7, 9, and 10 were a contributing factor in all of the above-described personnel actions, with the exception of the alleged personnel actions that predated them.

¶40    Disclosure 8 is a different matter. The record shows that, on April 5, 2016, the appellant filed a Form 12 disclosure with OSC concerning the agency's alleged failure to protect confidential business information. 0112 IAF, Tab 1 at 3, 38-45. However, the appellant has not alleged, and there is otherwise no indication in the record, that any official involved in any of the claimed personnel actions had either actual or constructive knowledge of this activity during the relevant time period. In the absence of such evidence or allegation, the appellant has not made a nonfrivolous allegation of contributing factor under the knowledge/timing test. *See Johnson v. Department of Defense*, 95 M.S.P.R. 192, ¶¶ 9-10 (2003), *aff'd*, 97 F. App'x 325 (Fed. Cir. 2004).

¶41    Nevertheless, the knowledge/timing test is but one way for an appellant to prove contributing factor.  If an appellant has failed to make a nonfrivolous allegation of contributing factor under the knowledge/timing test, the Board will consider whether she has met her burden by alternative means.  *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012).  Specifically, the Board will consider other evidence, such as the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant.  *Id.*

¶42    We find that the record is sufficient to support a nonfrivolous allegation of contributing factor under this standard.  Specifically, in her Form 12 complaint, the appellant directly accused her first- and second-level supervisors of being complicit in the mishandling of confidential business information.  0112 IAF, Tab 1 at 38.  We find that such an accusation would be sufficient to create some retaliatory motive.  Furthermore, as explained above, the record is sufficient to support a nonfrivolous allegation that one or both of these officials were involved in each of the claimed personnel actions, and that the personnel actions occurred more or less within the general timeframe that contributing factor might be inferred.  The strength or weakness of the agency's decisions to take or fail to take these various personnel actions is difficult to assess at this stage of the appeal, but on balance, we find that the appellant's allegations are sufficient for jurisdictional purposes, and that she has raised a nonfrivolous allegation that (with the exception of the 13-day suspension, which predated it) Disclosure 8 was a contributing factor in all of the claimed personnel actions.  *See Marano v. Department of Justice*, 2 F.3d 1137, 1140 (Fed.Cir.1993) (stating that "the legislative history of the WPA emphasizes that 'any' weight given to the protected disclosures, either alone or even in combination with other factors, can satisfy the 'contributing factor' test"); *Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007) (finding that the appellant's allegations of

contributing factor were minimally sufficient to meet the low standard of a nonfrivolous allegation).

¶43    For the reasons explained above, we find that the appellant has established jurisdiction over her appeal, and that she is entitled to an adjudication of the merits, including her requested hearing and an opportunity to conduct discovery. *See id.*  On remand, the issues will be limited to the following.  First, the appellant will have the burden of proving her prima facie case by preponderant evidence by showing that Disclosures 7 and 9 were protected under 5 U.S.C. § 2302(b)(8)(A) or section 2302(f)(2), as discussed above; Disclosure 8 was a protected activity under 5 U.S.C. § 2302(b)(9)(C); Disclosure 10 was a protected activity under 5 U.S.C. § 2302(b)(9)(D); the claimed personnel actions satisfy the definition of "personnel action" under 5 U.S.C. § 2302(a)(2)(A); and her disclosures were a contributing factor in those personnel actions.  If the appellant meets this burden, the agency will have the opportunity to prove by clear and convincing evidence that it would have taken the same personnel actions notwithstanding the appellant's protected disclosure or disclosures. *See Runstrom v. Department of Veterans Affairs*, 123 M.S.P.R. 169, ¶ 12 (2016).[11]  In the remand initial decision, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order.

---

[11] We note that the Board has recently issued final decisions in other appeals in which the appellant may have raised some of the same alleged protected disclosures and activities that are at issue in this appeal. *Dabner v. Environmental Protection Agency*, MSPB Docket Nos. CH-4324-17-0458-I-1 and CH-0752-17-0398-I-1, Final Order (Apr. 28, 2023); *Dabner v. Environmental Protection Agency*, MSPB Docket Nos. CH-0752-18-0572-I-1 and CH-1221-19-0175-W-1, Final Order (May 1, 2023). The parties will have an opportunity on remand to address the preclusive effect, if any, of the Board's findings in those appeals.

## **ORDER**

¶44      For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                  /s/ for
                                            Jennifer Everling
                                            Acting Clerk of the Board

Washington, D.C.