# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DAVID MASTERS,<br>　　　　　Appellant,<br><br>　　　v.<br><br>DEPARTMENT OF HOMELAND<br>　　SECURITY,<br>　　　　　Agency. | DOCKET NUMBER<br>DC-1221-17-0646-W-1<br><br><br>DATE: March 19, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Adam A. Carter</u>, Esquire, Washington, D.C., for the appellant.

<u>Aditi Shah</u>, Esquire, <u>Michelle L. Perry</u>, Esquire, and <u>Letitia Yates</u>, Esquire, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### REMAND ORDER

　　The appellant has filed a petition for review of the initial decision in this individual right of action (IRA), which denied his request for corrective action, finding that he failed to make a protected disclosure. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant is an Engineering Advisor with the Science and Technology Directorate (S&T) within the Homeland Security Advance Research Projects Agency (HSARPA) of the Department of Homeland Security (DHS). Initial Appeal File (IAF), Tab 12 at 17-18. S&T provides "research, development, test, and evaluation" services to DHS. *Id.* at 47. From 2011 to approximately 2013, the appellant was involved in S&T's development for DHS's Customs and Border Protection (CBP) of a modeling tool to test how well various technologies would detect underground tunnels. IAF, Tab 7 at 44-45, Tab 23, Hearing Compact Disc One (HCD1), Track 4 at 5:30 (testimony of the appellant). S&T received approximately $8 million in Federal funds to develop this modeling tool, which the appellant testified was successfully completed. HCD1, Track 4 at 6:16 (testimony of the appellant).

Subsequently, in approximately August 2015, DHS "obligated" $1.6 million to conduct the "analysis of alternatives" (AoA) at issue in this appeal. HCD1, Track 2 at 1:08:38 (testimony of a Border Patrol Supervisory Program Manager).[2] The AoA team consisted of two employees from CBP and two from S&T, but did not include the appellant. *Id.* at 1:11:56 (testimony of the Border Patrol Supervisory Program Manager). An AoA is an analytical comparison of alternative solutions for specific capability gaps and needs. IAF, Tab 18 at 44. An AoA explores the alternatives with the goal of identifying the most promising approach for the user. *Id.* Here, the AoA was being conducted to outline alternative proposals for building current and future systems to detect and locate clandestine tunnels along the southern United States border. IAF, Tab 1 at 42, Tab 18 at 162. DHS contracted with the Homeland Security Studies and Analysis

---

[2] The U.S. Border Patrol is a component of CBP. HCD1, Track 2 at 1:11:44 (testimony of the Border Patrol Supervisory Program Manager).

Institute (HSSAI) to conduct the AoA, ultimately paying HSSAI around $1 million for its work. HCD1, Track 2 at 1:07:57 (testimony of the Border Patrol Supervisory Program Manager). As the expert in the field of tunnel detection technology,[3] the appellant was brought on to the project to facilitate moving things forward, including being invited to a "working group meeting" on August 22, 2016, between S&T and CBP.[4] IAF, Tab 12 at 19-20, 25.

According to the appellant, during the meeting, which became loud and confrontational, he expressed concerns with the performance of the AoA, including HSSAI, CBP, and S&T's mismanagement of the project, excessive cost, and failure to follow DHS directives pertaining to AoAs. IAF, Tab 1 at 20-21, Tab 12 at 25, 29, Tab 17 at 21. Specifically, he alleges that he stated that the AoA was not using the modeling tool S&T previously developed for testing tunnel technologies and that HSSAI did not provide an adequate analysis on how it selected various alternatives. IAF, Tab 1 at 20, Tab 12 at 25-26. Seemingly unbeknownst to the appellant, most everyone else in the meeting was already aware of HSSAI's failures and that the AoA was not going well, and intended the meeting to serve as a catalyst to get things back on track. IAF, Tab 24, Hearing Compact Disc Two (HCD2), Track 1 at 6:59:50 (testimony of a Deputy Director within HSARPA).

According to a Chief Systems Engineer with S&T, who was present at the meeting, the appellant continually talked over and interrupted others, became defensive, and raised his voice. IAF, Tab 12 at 29, Tab 18 at 115-16. The day after the meeting, the appellant met with the S&T Director and an HSARPA Deputy Director at the agency to discuss the incident. IAF, Tab 12 at 29.

---

[3] An S&T Chief Systems Engineer testified that it was "obvious" that the appellant was the technical expert in S&T on the technology at issue. HCD1, Track 1 at 1:00:40 (testimony of a Chief Systems Engineer).

[4] The parties dispute the extent of the appellant's involvement with the AoA in question prior to the August 22, 2016 meeting. PFR File, Tab 1 at 14-15, Tab 3 at 18; IAF, Tab 7 at 39, Tab 18 at 104-07.

According to the Director, the appellant again became "rude towards [them], also, arguing and talking over [them]." *Id.* The appellant claims that he essentially repeated his disclosures at this meeting. *Id.* at 26.

On October 12, 2016, the S&T Director proposed to suspend the appellant for 3 days for "inappropriate behavior" at the August 22 and 23, 2016 meetings. IAF, Tab 12 at 28-29. On November 1, 2016, the agency sustained the 3-day suspension. *Id.* at 18-22. The appellant filed a whistleblower retaliation complaint with the Office of Special Counsel (OSC). IAF, Tab 7 at 121-34. OSC subsequently informed the appellant that it was closing his complaint and that he could file an IRA appeal with the Board. *Id*. at 119. The appellant filed this appeal. IAF, Tab 1. In response to a jurisdictional order, he alleged that at the August 22, 2016 meeting he raised the concern that the AoA was not transparent. IAF, Tab 7 at 16. He cited Appendix G of the DHS Acquisition Instruction/Guidebook, which sets forth the agency's rules and guidance involving the performance of AoAs. IAF, Tab 7 at 16, 80, 82-84. In relevant part, the Instruction/Guidebook states that analyses conducted during the AoA "must be completed at a sufficient level of transparency and traceability to clearly show the effectiveness, suitability, and financial justification for each alternative considered." *Id.* at 16, 83.

Following the appellant's and agency's responses to the jurisdictional order, the administrative judge found that the appellant had established jurisdiction by exhausting his administrative remedies before OSC. IAF, Tab 10 at 1. The administrative judge also found that the appellant made a nonfrivolous allegation of a protected disclosure of "concerns about mismanagement of the [AoA]" at the August 22 and 23, 2016 meetings. *Id.* at 1-2. In a summary of the telephonic prehearing conference, the administrative judge set forth the appellant's burden of proof, and, over the agency's objection, declined to impose any higher burden on the appellant regardless of whether his disclosures were made in the normal course of his duties. IAF, Tab 20 at 2 n.1. After holding a

hearing, he issued an initial decision denying the appellant's request for corrective action, finding that he failed to make a protected disclosure. IAF, Tabs 23-24, Tab 25, Initial Decision (ID) at 1, 34-35. In doing so, he identified the appellant's disclosures as alleging gross mismanagement when he was not selected to be a member of the AoA team and a gross waste of funds because the AoA team was repeating the same activities the appellant had already performed from 2011 to 2013 to create his modeling tool. ID at 31.

In reaching his conclusion, the administrative judge suggested that the appellant's statements at the August 22, 2016 meeting were not protected because several other persons in attendance at the meeting, as well as members of S&T management, were already aware of the information the appellant was allegedly disclosing. *Id.* The administrative judge additionally discussed the agency's rationale in disciplining the appellant, crediting testimony that his behavior was rude, argumentative, and unprofessional. ID at 32-33. The administrative judge further concluded that, rather than gross mismanagement or a gross waste of funds, the actions of HSSAI, S&T, and CBP with which the appellant took offense were legitimate management decisions. ID at 33. Finally, the administrative judge found that the appellant did not identify any management action or inaction that created a substantial risk of significant impact on the agency's ability to accomplish its mission. ID at 34. The administrative judge did not address the appellant's claim that his disclosure evidenced a violation of a law, rule, or regulation, other than to note that the test for whether an appellant has a reasonable belief that a disclosure evidences a violation of an agency rule or regulation "is an objective one." ID at 30.

The appellant has filed a petition for review challenging the initial decision and reasserting that his communications in the August 22 and 23, 2016 meetings were protected disclosures that were contributing factors in the agency's decision to suspend him for 3 days. Petition for Review (PFR) File, Tab 1 at 4. The appellant predominantly challenges the determination that the disclosure

identified by the administrative judge did not reveal what the appellant reasonably believed was gross mismanagement or a gross waste of funds. *Id.* at 14-18. In particular, he argues that his disclosure of the failure to use him on the AoA and repetition of S&T's prior work were part of a larger disclosure that the AoA was "irredeemable" and "needed to be redone." *Id.* at 14-15. In support of his claim that he had a reasonable belief of gross mismanagement or a gross waste of funds, he asserts that the AoA was restarted, re-performed, and, under his leadership, became the "gold standard" of AoAs. *Id.* at 17. He disputes that this was merely a policy disagreement that was debatable, as he was able to convince the Border Patrol Supervisory Program Manager that "there was no technical merit in maintaining the current path." *Id.* He further claims that, due to the temporal proximity of his disclosures and the personnel action, his disclosures were a contributing factor in his 3-day suspension. *Id.* at 19-20. Finally, based on the inconsistencies in the notice of proposed suspension with the testimony in the hearing, which according to him demonstrate that the justifications were "verifiably false," he claims that the agency cannot meet its burden of proving by clear and convincing evidence that it would have disciplined him absent his disclosures. *Id.* at 20-21.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>We modify the administrative judge's jurisdictional finding to properly identify the two disclosures that the appellant exhausted with OSC.</u>

> *The administrative judge did not properly identify the disclosures that the appellant exhausted.*

Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), the Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C.

§ 2302(a). 5 U.S.C. § 1221(e)(1); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).[5] The administrative judge addressed two purported disclosures. ID at 31. We agree that the appellant exhausted one of these disclosures. We modify the administrative judge's remaining findings on exhaustion.

Under 5 U.S.C. § 1214(a)(3), an employee is required to seek corrective action from OSC before seeking corrective action from the Board. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011). The Board, in *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11, recently clarified the substantive requirements of exhaustion. The requirements are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. *Id.*, ¶ 10. The Board's jurisdiction is limited to those issues that previously have been raised with OSC. *Id.* However, an appellant may give a more detailed account of his whistleblowing activities before the Board than he did to OSC. *Id.* (citing *Briley v. National Archives & Records Administration*, 236 F.3d 1373, 1378 (Fed. Cir. 2001)). An appellant may demonstrate exhaustion through his initial OSC complaint, evidence that he amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations, and his written responses to OSC referencing the amended allegations. *Id.*, ¶ 11; *Mason*, 116 M.S.P.R.135, ¶ 8. Alternatively, exhaustion may be proven through other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in his appeal. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 7; *Chambers*, 2022 MSPB 8, ¶ 11.

The appellant provided his OSC complaint with attachments and OSC's letter closing out his complaint. IAF, Tab 1 at 13-96. In these documents, he specifically alleged that on August 22 and 23, 2016, he identified the following

---

[5] In addition to protected disclosures, certain protected activities may serve as the basis for an IRA appeal. *Salerno*, 123 M.S.P.R. 230, ¶ 5. The appellant has not alleged that he engaged in a protected activity.

deficiencies in the AoA: (1) the failure to employ the modeling tool to test tunnel detection technology that S&T had developed between 2011 and 2013, and (2) "lapses in technical analysis." *Id.* at 20-21. The appellant also identified these two disclosures in his response to a jurisdictional order requiring that he list his disclosures and activities. IAF, Tab 4 at 7, Tab 7 at 7-8, 44-45. However, the administrative judge addressed only the first disclosure in the initial decision, and not the second. ID at 31; *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 14 (2015) (remanding an appeal because the administrative judge failed to identify and analyze each of the appellant's alleged disclosures from his OSC complaint and failed to articulate the relevant standard of proof). The appellant alludes to his second disclosure on review. PFR File, Tab 1 at 8-9. Therefore, we modify the initial decision to find that the appellant exhausted this disclosure and we address it further below.

The administrative judge analyzed the merits of a purported third disclosure: that the agency should have included the appellant on the AoA as the Technical Advisor. ID at 31. However, this was in error because the appellant did not identify this disclosure in his OSC complaint or in his response to the administrative judge's jurisdictional order. ID at 31; IAF, Tab 1 at 13-96, Tab 4 at 7, Tab 7 at 4-23. Thus, we vacate the administrative judge's findings as to this third unexhausted disclosure because the Board lacks jurisdiction to address it. We do not address the appellant's arguments on review that this disclosure was protected. PFR File, Tab 1 at 14.

Finally, the appellant has suggested on review that he more broadly disclosed that the AoA was "irredeemable" and "needed to be redone." PFR File, Tab 1 at 14-15. To the extent the appellant is alleging that he separately disclosed wrongdoing in connection with this claim, the Board lacks jurisdiction over it. The appellant has not shown that he raised this claim with OSC. IAF, Tab 1 at 20-21, Tab 7 at 8.

> *The appellant nonfrivolously alleged that his disclosures of the failure to use prior tunnel detection technology and the lack of analysis in the AoA were protected and contributing factors in his 3-day suspension.*

A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Skarada*, 2022 MSPB 17, ¶ 12. The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id.*; *see* 5 U.S.C. § 2302(b)(8). The disclosures must be specific and detailed, not vague allegations of wrongdoing. *Salerno*, 123 M.S.P.R. 230, ¶ 6.

First, the appellant claimed that the AoA was grossly mismanaged and a gross waste of funds because it did not utilize the existing modeling tools specifically designed to aid in this process. IAF, Tab 1 at 20. The administrative judge generally found that the Board has jurisdiction over the appellant's disclosures, without specifically identifying them. IAF, Tab 10; ID at 2-3. Nonetheless, the parties do not challenge the Board's jurisdiction over this disclosure.

We modify the initial decision to specifically find that the Board has jurisdiction over this disclosure. *See MacDonald v. Department of Justice*, 105 M.S.P.R. 83, ¶ 7 (2007) (finding that before the Board may proceed to the merits of an IRA appeal, it must first address the matter of jurisdiction). The reasonable person in the appellant's position could believe that the agency's expenditure of what was likely a large amount of money on a project without

using relevant existing technology was a gross waste of funds. A gross waste of funds is a more than debatable expenditure that is significantly out of proportion with the benefits reasonably expected to accrue to the Government. *MaGowan v. Environment Protection Agency*, 119 M.S.P.R. 9, ¶ 7 (2012). In particular, the appellant alleged that the AoA cost the agency $2 million. IAF, Tab 1 at 20, Tab 12 at 25-26. This belief was objectively reasonable given that $1.6 million was, in fact, allocated for the project. HCD1, Track 2 at 1:08:38 (testimony of a Customs and Border Patrol Supervisory Program Manager).

Further, the individuals who proposed and finalized the appellant's suspension were aware of his disclosures at the time that they issued the action, which was within the 3 months following the disclosures. IAF, Tab 12 at 18-21, 25, 28-29. Thus, the appellant established that the disclosure was a contributing factor in the suspension under the knowledge/timing test. *See Salerno*, 123 M.S.P.R. 230, ¶ 14 (explaining that an appellant may establish contributing factor by showing that individuals with knowledge of his disclosures took a personnel action within 1 to 2 years of the disclosures).

As to the second disclosure, the appellant alleged that he pointed out the lack of analysis in the AoA. IAF, Tab 12 at 19-20, 25. According to the appellant, he specifically disclosed the failure of the AoA to employ methods such as "physics, numerical methods, modeling performance, laboratory testing, and field testing." IAF, Tab 1 at 20. We find that the Board has jurisdiction over this disclosure, which the administrative judge did not address.

There is no dispute that the AoA lacked analysis. IAF, Tab 18 at 12-13, 47-49, 51, 59-61, 65-66, 73-85, 87, 99-100. The appellant alleged in conjunction with the lack of analysis that the AoA team had not followed "the DHS AoA Directive." IAF, Tab 12 at 25. This appears to be a reference to Appendix G of the DHS's Acquisition Instructions/Guidebook, which provides guidance on how to conduct an AoA and Alternative Analysis (AA) (Oct. 1, 2011). IAF, Tab 7 at 80. Appendix G provides that: "Analyses conducted during the AoA/AA (e.g.,

trade studies, modeling, simulation, and experimentation) must be completed at a sufficient level of transparency and traceability to clearly show the effectiveness, suitability, and financial justification for each alternative considered." *Id.* at 83. We find that the reasonable person in the appellant's position could have believed that the lack of analysis in the AoA constituted a violation of the Appendix G. Further, given the close proximity in time between when the appellant disclosed the violation of Appendix G and his 3-day suspension, we conclude that he also nonfrivolously alleged contributing factor as to this disclosure under the knowledge/timing test. IAF, Tab 7 at 83, Tab 12 at 18-21, 25, 28-29. Thus, the appellant met his jurisdictional burden as to this disclosure.

<u>We remand the appeal for a determination of whether the appellant proved that he reasonably believed that the AoA's lack of analysis violated Appendix G of the Acquisition Instructions/Guidebook or evidenced other agency wrongdoing.</u>

After an appellant establishes jurisdiction over an IRA appeal, he must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he (1) made a protected disclosure, and (2) that the protected disclosure was a contributing factor in a personnel action taken against him.[6] 5 U.S.C. § 1221(e)(1); *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 11 (2012). We agree with the administrative judge that the appellant did not meet his burden to prove that he reasonably believed that the failure to use S&T's existing tunnel model disclosed Government wrongdoing. ID at 31-32. We modify those findings as discussed below. We remand the appellant's disclosure that the AoA lacked analysis to the administrative judge for further adjudication.

---

[6] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

*We agree with the administrative judge that the appellant was not required to meet the "extra proof" requirement set forth in 5 U.S.C. § 2302(f)(2), but we modify the initial decision to clarify the basis for that finding.*

Before addressing the disclosures, we must first address one of the administrative judge's findings concerning the nature of the appellant's burden. In a telephonic conference summary order that set forth the parties' respective burdens, the administrative judge acknowledged the agency's argument that, pursuant to 5 U.S.C. § 2302(f)(2), disclosures made during the normal course of an employee's duties were subjected to a higher burden, but concluded that neither the Board's commentary in *Benton-Flores v. Department of Defense*, 121 M.S.P.R. 428, ¶ 15 (2014), nor the language of 5 U.S.C. § 2302(f)(2) created any burden greater than that which already exists. IAF, Tab 20 at 2 n.1. In the initial decision, the administrative judge noted that the appellant's disclosures appeared to be related to his duties as an Engineer in the S&T, but determined that the WPEA removed the principle that a disclosure is not protected if made within the scope of one's duties. ID at 4.

As the Board recently held in *Salazar v. Department of Veterans Affairs*, 2022 MPSB 42, ¶¶ 10-14, 22, the effect of an amendment to 5 U.S.C. § 2302(f)(2) in the National Defense Authorization Act for Fiscal Year 2018 (2018 NDAA), signed into law on December 12, 2017, is that disclosures made in the normal course of duties of an employee whose principal job function is not to regularly investigate and disclose wrongdoing fall under the generally applicable provisions in 5 U.S.C. § 2302(b)(8), and are not subject to the requirement of proving actual reprisal in 5 U.S.C. § 2302(f)(2). In *Salazar*, 2022 MSPB 42, ¶¶ 15-21, the Board held that the 2018 NDAA's amendment to 5 U.S.C. § 2302(f)(2) clarified the prior version of that statute enacted in the WPEA, and so the amendment applied retroactively to appeals pending at the time the statute was enacted.

The administrative judge did not have the benefit of our decision in *Salazar* at the time he issued the initial decision. The appellant's position description identifies his principal job functions as an Engineering Advisor as including the following: providing expert advice and counsel on projects within the S&T's portfolio; interpreting the impact of scientific and technical advances on broad DHS requirements; conceiving of, proposing for review, evaluating, and recommending the integration of others' proposals for basic and applied research efforts; serving on panels and committees and providing technical presentations, briefings, and papers; and advising S&T division leadership on best practices or approaches for addressing areas of concerns, among other duties. IAF, Tab 12 at 46-49. Because there is no indication that the appellant's principal job function at the time of his disclosure was to regularly investigate and disclose wrongdoing, we conclude that the administrative judge correctly declined to apply the higher burden of proof set forth in 5 U.S.C. § 2302(f)(2) to determine whether the appellant made a protected disclosure under 5 U.S.C. § 2302(b)(8). ID at 4. Because we have found that section 2302(f)(2) is not applicable, we vacate the administrative judge's finding that the appellant's disclosures appeared to be related to his job duties. ID at 4.

> *We agree, as modified, with the administrative judge's finding that the appellant's disclosure that the agency failed to use S&T's modeling tool was not protected.*

For months leading up to the August 22, 2016 meeting, the appellant was made aware that numerous entities involved in the AoA process were attempting to use his modeling tool. IAF, Tab 18 at 133-37. During this time, he was informed that there were problems with the tool and he agreed to conduct training sessions with various parties to help them better use the tool. *Id.* As such, the appellant could not have reasonably believed that the failure to use the tool evidenced Government wrongdoing.

To the extent that the administrative judge suggested that the disclosure was not protected because it concerned legitimate managerial decisions or disclosed matters that were already known, we modify those findings to reflect our reasoning as stated here. ID at 31-32. A disclosure is not excluded from protection merely because it revealed information that had been previously disclosed. 5 U.S.C. § 2302(f)(1)(B); *Day v. Department of Homeland Security*, 119 M.S.P.R. 589, ¶ 18 (2013). Thus, the administrative judge's reasoning to the contrary is mistaken. ID at 32. There is an exclusion, however, for disclosures that express general philosophical or policy disagreements with agency decisions or actions, unless the disclosures separately constitute a protected disclosure of one of the categories of wrongdoing listed in 5 U.S.C. § 2302(b)(8). 5 U.S.C. § 2302(a)(2)(D); *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015). It appears that the administrative judge may have attempted to invoke this exception when discussing the legitimate managerial nature of the agency's decisions. ID at 31-32. However, as discussed above, there was an attempt to use the existing tunnel modeling tool, and the appellant was aware of that attempt. Therefore, the alleged failure to use the tool, if any, was not a matter of philosophical or policy debate. Rather it was a practical decision based on the difficulty of using the tool.

*We remand for further consideration of the appellant's disclosure that the AoA lacked analysis.*

The administrative judge did not address the appellant's disclosure of a "lack of analysis in the AoA's technical approach and the AoA team not following the DHS AoA directive." IAF, Tab 12 at 25. According to the appellant, these errors in the AoA performance occurred due to gross mismanagement and resulted in a gross waste of funds. IAF, Tab 1 at 15, 20. However, at the heart of that disclosure is the appellant's insistence that the AoA was not performed in accordance with the requisite rules. IAF, Tab 1 at 15, 33, Tab 7 at 16.

There is no *de minimis* exception for a disclosure involving a violation of a law, rule, or regulation. *Fisher v. Environmental Protection Agency*, 108 M.S.P.R. 296, ¶ 9 (2008). Moreover, although the WPEA does not define a "rule," the Board has suggested that it includes established or authoritative standards for conduct or behavior. *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 25 (2013). The DHS Acquisition Instruction/Guidebook sets forth the agency-wide rules for the completion of an AoA. IAF, Tab 18 at 40, 42. It provides a "systematic analytical" and comprehensive approach to the completion of AoAs. IAF, Tab 7 at 82-84. Appendix G sets forth the steps of the process, the roles of the various parties involved, and what is required after the completion of the AoA. *Id.* at 88-99. The Appendix routinely refers to procedures that must be done for the proper completion of an AoA, including, as cited by the appellant, that it "*must* be completed at a sufficient level of transparency and traceability to clearly show the effectiveness, suitability, and financial justification for each alternative considered." *Id.* at 82-84 (emphasis added). Accordingly, we agree with the appellant that the failure to comply with the AoA would be a violation of an agency rule.

However, we cannot decide the reasonableness of the appellant's belief in the first instance because the credibility of witnesses testifying at hearing, including the appellant, is at issue. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 20 (2010). Deciding issues of credibility is normally the province of the trier of fact. *Id.* Therefore, we must remand this appeal for the administrative judge to determine whether the appellant proved the reasonableness of his belief that the agency committed wrongdoing. On remand, the administrative judge should also consider whether the appellant's disclosure fell within any other category of wrongdoing under 5 U.S.C. § 2302(b)(8); *see El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 11 (2015) (explaining that an administrative judge properly attempted to read an appellant's claimed disclosures in the broadest possible way because an appellant is not required to

correctly label a category of wrongdoing), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016).

> *The appellant's disclosure of a lack of analysis may be protected regardless of whether it concerned the conduct of HSSAI, a Government contractor.*

Here, the actual lack of analysis was at least partially attributable to the conduct of HSSAI, with which the agency contracted to complete the AoA. *E.g.,* IAF, Tab 17 at 129, Tab 18 at 71-85. The Board has held that allegations against a Government contractor may constitute protected disclosures when the agency was in a position to influence or exercise oversight over the organization's performance of those functions such that the Government's interests and good name are implicated in the alleged wrongdoing at issue. *Johnson v. Department of Health & Human Services*, 93 M.S.P.R. 38, ¶ 10 (2002); *see Covington v. Department of the Interior*, 2023 MSPB 5, ¶¶ 15-19 (finding that the WPEA did not change the longstanding principle that a disclosure of wrongdoing committed by a non-Federal Government entity may be protected only when the Federal Government's interests and good name are implicated in the alleged wrongdoing). Here, the parties agree that DHS contracted with HSSAI to conduct the AoA. IAF, Tab 17 at 5, Tab 18 at 10. HSSAI was conducting the AoA to assist in the development of tunnel detection programs, which is a function related to the overall responsibilities of both S&T and CBP. HSSAI was working directly and frequently with S&T and CBP, and those DHS components identified problems with HSSAI's work on the AoA and actively sought to resolve them. IAF, Tab 17 at 94, 99, 133, Tab 18 at 71. S&T and CBP were ultimately in a position to steer the work of HSSAI, including the decision to pause its work on the AoA. IAF, Tab 17 at 94, 99, 133; PFR File, Tab 1 at 17-18. Accordingly, CBP and S&T were in a position to influence and exercise oversight over HSSAI's performance of this function. Thus, the Government's interest of properly and accurately detecting tunnels is implicated in the alleged wrongdoing. Additionally, the

Government's good name, i.e., the reputation of S&T to provide a quality product to its clients, is also implicated in the alleged wrongdoing. IAF, Tab 18 at 71. Accordingly, the appellant's disclosures may be protected even though they at least partially concern the conduct of HSSAI.

## ORDER

For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order. The administrative judge should provide the parties with an opportunity to submit additional evidence and argument on the issues discussed above and, if necessary, hold a supplemental hearing to further develop the record.

*Gina K. Grippando*

FOR THE BOARD:                       _____

                                     Gina K. Grippando
                                     Clerk of the Board

Washington, D.C.